[Cite as *In re T.J.T.*, 2017-Ohio-4279.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. 16 BE 0047 |
| | ) | |
| T.J.T. | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:　　Civil Appeal from the Court of Common
　　　　　　　　　　　　　　　Pleas, Juvenile Division, of Belmont
　　　　　　　　　　　　　　　County, Ohio
　　　　　　　　　　　　　　　Case No. 16 JG 0007

JUDGMENT:　　　　　　　　　　Affirmed.

APPEARANCES:

For Elaine Billitter:　　　　　　Atty. Rebbeca L. Bench
　　　　　　　　　　　　　　　23 Driggs Lane
　　　　　　　　　　　　　　　Bridgeport, Ohio  43912


For Sharon and Tommy Joe Bruce, II:　　Atty. Eric Costine
　　　　　　　　　　　　　　　The Costine Law Firm
　　　　　　　　　　　　　　　136 West Main Street
　　　　　　　　　　　　　　　St. Clairsville, Ohio  43950


Guardian Ad Litem:　　　　　　Atty. Edward G. Sutersic
　　　　　　　　　　　　　　　67529 Willow Grove Road
　　　　　　　　　　　　　　　St. Clairsville, Ohio  43950

JUDGES:

Hon. Cheryl L. Waite
Hon. Mary DeGenaro
Hon. Carol Ann Robb

　　　　　　　　　　　　　　　Dated:  June 12, 2017

WAITE, J.

**{¶1}** Appellant, Elaine Billitter, appeals the judgment of the Belmont County Court of Common Pleas, Juvenile Division, designating Appellees, Sharon and Tommy Joe Bruce, II, as the legal custodians of T.J.T. T.J.T. was born February 2, 2009. Appellant is the child's natural grandmother and Appellee Sharon Bruce ("Sharon") is the maternal aunt. Appellee Tommy Joe Bruce, II, is Sharon's husband. The child's mother died suddenly of a drug overdose in January of 2016 without a will and without naming a custodian for the child. The child's alleged father is currently serving a twenty-year term of incarceration for two sexual misconduct convictions.

**{¶2}** Appellant filed a petition for custody on January 6, 2016, two days after the death of the child's mother. Appellees filed a petition for custody on January 29, 2016. Appellees filed a request for appointment of a *guardian ad litem* on February 26, 2016. On April 6, 2016, Appellant filed a motion for a child interview which was granted by the trial court. The *guardian ad litem* filed an interim custody report on April 11, 2016 followed by two additional reports on May 25, 2016 and July 24, 2016. The final *guardian ad litem* report concluded that, although Appellees could provide a much more traditional and materially beneficial environment, the child had undergone a great deal of trauma due to the loss of the mother. The bond with grandmother was strong and had been a large factor in the child's ability to heal and move forward. The custody hearing was held on two separate dates, July 27, 2016 and August 10, 2016. The *guardian ad litem* had filed his final report and was present for the hearing. Testimony was received from the *guardian ad litem* as well as Appellant,

Appellee Sharon, Appellant's sister Patricia Piper and the child's cousin Dimitri Turner. Turner's adoptive mother, Kim Pollock, also testified.

{¶3} On September 1, 2016, a lengthy magistrate's decision was issued. In it, the magistrate detailed the facts of the case and set forth a number of findings of fact and conclusions of law, ultimately determining that custody should be granted to Appellees with regular visitation given to Appellant. On September 6, 2016, Appellant filed a motion which included: (1) objections to the magistrate's decision with a request for additional time for objections after completion of the transcript; (2) a motion for stay pending a hearing on the objections; and (3) a motion requesting the appointment of a *guardian ad litem* or attorney for the child as the existing *guardian ad litem* for the child had retired. On September 9, 2016 the trial court issued a judgment entry which read, in pertinent part:

> The Court has reviewed the file on this matter and sees no reason to overrule the Magistrate's recommendation. The Court has already issued an order regarding this matter and finds the same is in the best interest of the child.
>
> Should further proceedings be necessary in this matter, the Court will then consider whether a Guardian ad Litem, or an attorney for the child, is necessary.
>
> It is so ordered.

(9/9/16 J.E.)

**{¶4}** On September 13, 2016, Appellant filed a motion for reconsideration and clarification of the September 9 order, noting that the judgment entry:

[A]ppears to overruling [sic] Petitioner's Objection and supplemental Motions. However, the Entry does not address the request for stay nor indicate if the Docket and Journal Entry was meant to be a Final Appealable Order. Both of which will have to be addressed prior to the Petitioner filing her Notice of Appeal with the appellate court.

If the Court intended it's [sic] September 9, 2016 Entry to be the Final Appealable Order, the undersigned would ask this Court to reconsider it's [sic] position and grant the stay and allow the Objection to be fully briefed by the parties to the case.

Second, it appears the Court is also overruling Petitioner's request that the Court appoint an attorney for the minor child **at this time** but would consider if [sic] the same if further proceedings become necessary. Petitioner would respectfully ask the Court to reconsider it's [sic] Order and appoint counsel for the child based upon Rule 4 of the Ohio Rules of Juvenile Procedure and the Seventh District's decisions in both *In re Moore, 158 Ohio App.3d 679, 2004-Ohio-4544* and *In the matter of A.S. 2014-Ohio-4282.* Because the Magistrate's Recommendations are against the expressed wishes of the child and contrary to the recommendations of the GAL, it is imperative that the child and/or the

GAL be afforded appointed counsel to file their own Objection to the Magistrate's Recommendation.  (Emphasis sic.)

(9/13/16 Motion for Reconsideration and Clarification of Order.)

**{¶5}**   On September 14, 2016, the trial court issued a journal entry stating, "[t]he Court has ruled on the Motion for Reconsideration, therefore the request for stay is denied.  It is so ordered."  (9/14/16 J.E.)

**{¶6}**   On September 15, 2016, Appellant filed this appeal along with a motion for stay and a motion requesting the appointment of counsel for the child.  On September 30, 2016, Appellees filed a memorandum in opposition to motion for stay pending appeal.  On December 5, 2016, we issued a judgment entry denying the appointment of counsel for the child pursuant to R.C. 2151.23(A)(2) and overruling Appellant's motion for stay.

**{¶7}**   As with many custody matters, this record reflects that many tragic circumstances have occurred in this child's young life.  Dysfunction and chaos prior to the mother's death created a situation where the child was living with his grandmother, who served as caretaker while the mother's drug addiction was escalating and the true identity of father remained questionable.  Due to her own circumstances, Appellant and the child were living in a camper, but by all accounts, including the child's teachers and the court-appointed *guardian ad litem*, the bond between the child and the grandmother was strong and the child expressed a desire to remain with her.  Appellees are Appellant's daughter and her husband.  Sharon is somewhat estranged from her mother and the rest of her extended family.  She had

no contact with the child prior to the death of her sister, the child's mother. Appellees are in a long term marriage, are both college educated; employed full-time; own a house; and have raised a son of their own who was sixteen years of age at the time the custody matter commenced. Appellant raises two assignments of error which both relate to manifest weight of the evidence. Thus, the assignments will be addressed together for clarity.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY GRANTING CUSTODY TO APPELLEES DETERMINING GREATER WEIGHT SHOULD BE GIVEN TO THE CHILD'S NEED FOR LONG TERM STABILITY OVER HIS PRESENT NEEDS AND CIRCUMSTANCES.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY GRANTING CUSTODY TO APPELLEES AND FAILING TO GIVE GREATER WEIGHT TO THE EXISTING BOND THE CHILD HAS WITH APPELLANT AND THE SERIOUS MENTAL AND EMOTIONAL HARM IT WOULD CAUSE HIM TO SEVER THAT BOND AND REMOVE HIM FROM APPELLANT'S CARE.

**{¶8}** Appellant claims that when the trial court made its custody determination, it failed to properly apply the facts at issue to the factors enumerated

in R.C. 3109.04. Appellant contends the trial court focused too heavily on possible future circumstances rather than the child's current circumstance and emotional needs.

{¶9} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. In considering a challenge to the manifest weight of the evidence, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re A.S.*, 7th Dist. No. 11 JE 29, 2012-Ohio-5468, ¶ 10.

{¶10} In weighing the evidence, a reviewing court must be mindful of the presumption in favor of the finder of fact. *Id.* In determining whether the trial court's decision is manifestly against the weight of the evidence, "every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.*

{¶11} Appellant argues that the court looked at the future potential for stability for the child based on the Appellees' long-term marriage, stable economic status and

the fact that they had already raised a son of their own when the court should have considered the present emotional needs of the child and the fact that the child has a strong bond with Appellant and had no relationship with Appellees until the court-ordered visitation. Appellant relies on two specific cases in support of her contention that custody should be determined based on present circumstances and not speculation about future conditions: *Siebert v. Seibert,* 66 Ohio App.3d 342, 584 N.E.2d 41 (12th Dist.1990) and *Reinhart v. Allen,* 3d Dist. No. 13-08-02, 2009-Ohio-5277.

{¶12} In *Seibert,* the Twelfth District held that the trial court abused its discretion in awarding custody of a four-year-old child to the father based on future circumstances without regard to the young age of the child. The trial court relied on the testimony of a psychologist who indicated that, although mother had been the child's primary caretaker, mother was unstable due to father's lack of emotional and financial support. The psychologist concluded that it was unclear mother would be stable enough in the future to take care of the child. The court held, "[a] custody award based on such future possibilities is contrary to the purpose of R.C. 3109.04 which is to award custody based on the present circumstances." *Id.* at 347.

{¶13} In *Reinhart*, the Third District held that the trial court did not err in awarding custody of a child to his mother when she had been the primary caretaker. To take into account mother's repeated statements about relocating out of state would require the court to speculate on where mother may reside in the future, and

awarding custody "based on future possibilities is contrary to the purpose of R.C. 3109.04, which is to award custody based on present circumstances." *Id.* at ¶ 17.

**{¶14}** The Twelfth District later distinguished *Seibert* in *Gehring v. Gehring*, 12th Dist. No. CA2003-03-038, 2004-Ohio-95, holding that evidence that a parent is a primary caretaker of a child is not the only relevant factor to be considered and there is no "presumptive quality" regarding that factor. *Id.* at ¶ 21.

**{¶15}** Citing *Seibert,* this Court has noted in a case involving custody of a parent and a nonparent, "[p]arents have no rights which transcend the child's best interest. A child's best interest for allocating rights and responsibilities is based on present circumstances, not on what possibly may happen in the future." *In re Davis,* 7th Dist. No. 02-CA-95, 2003-Ohio-809, ¶ 19.

**{¶16}** The crux of Appellant's argument is that the trial court overstepped its best interest analysis by speculating the child would have a better future with Appellees while not giving adequate consideration to the recommendation of the *guardian ad litem* and testimony of Appellant that removing the child from the close bond with grandmother as well as home, school and current friends and family would deal a further blow to the child emotionally in light of all present circumstances. Both Appellant and Appellee Sharon testified that the child previously had limited contact with Appellees and did not feel bonded to them at the time of the hearing despite the existing visitation order.

**{¶17}** Appellees respond that Appellant is a 60-year-old smoker living in a camper who presented with no evidence of any regular male role models in the

household, whereas Appellees have raised a son who is in high school and living in their home, have full time careers and can provide a more traditional and stable environment.

**{¶18}** The *guardian ad litem* addressed this issue in his final report. First, the report recounted interviews held with the child's classroom teacher and reading teacher:

> The teachers reported that after his mother's death, and under the care of his grandmother, he has greatly improved with respect to his school curriculum and relationships with his peers and teachers at Union Local Elementary School, and that he is a strong B student. The teachers state that his grandmother is very attentive to him. The teachers are aware of his tragic background and opined he should not be separated at this time from his grandmother.

(7/26/16 GAL Final Report, p. 4.)

**{¶19}** In the report, he next addressed the interaction the child has with both his grandmother and his aunt.

> From my many conversations with both of them, I conclude that they both have a genuine concern for [the child]. The aunt expresses in the long term she can create a better environment for him and would add stability to his life. His grandmother, on the other hand, does not concentrate on long term plans, but is more appropriately dealing with his current needs of providing him with security and tender loving care.

As noble as the aunt is in addressing his needs as she perceives them, and considering we are dealing with a seven year old child who has had a tragic past, I can only conclude that his present interaction and interrelationship is stronger with the grandmother than with the aunt and her family.

[The child] is a little seven year old boy, and as any seven year old, he is not thinking about a long range plan. His thoughts are that he does not want his life disrupted by having the bond between him and his grandmother broken.

* * *

We are now addressing the present. If circumstances change, in the future, either party or others can request the court to revisit the issue concerning [the child's] best interest. I conclude that [the child's] best interest is that the bonding established between him and his grandmother, which was a product of circumstances not created by either of them, should not be broken. Further, any perceived benefits in breaking this bond are substantially outweighed by the harm that will be occasioned to him. [The child] wants nothing more than to presently share his life with his grandmother.

(7/26/16 GAL Final Report, pp. 4-5.)

**{¶20}** A trial court's custody determination will not be overturned absent an abuse of discretion. *In re Pryor,* 86 Ohio App.3d 327, 620 N.E.2d 973 (4th Dist.1993). In order to find an abuse of discretion, a reviewing court must find that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶21}** It is well-settled that a juvenile court may adjudicate custodial claims brought by nonparents at law. *In re Bonfield*, 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241, ¶ 43. The present case arose under R.C. 2151.23(A)(2), which gives the juvenile court exclusive jurisdiction to determine the custody of any child not a ward of another court of the state. The juvenile court must adjudicate such claims by conducting a best interest analysis in accordance with the factors set forth in R.C. 3109.04(F)(1). These factors include, but are not limited to: (a) the parents' wishes; (b) the child's wishes if the court has interviewed the child; (c) the child's interaction and interrelationship with the parents, siblings, and any other person who may significantly affect the child's best interests; (d) the child's adjustment to home, school, and community; (e) the mental and physical health of all relevant persons; (f) the parent more likely to honor and facilitate court-approved parenting time or companionship rights; (g) whether there has been a failure to make child support payments; (h) whether there has been any previous convictions of certain criminal offenses involving children; (i) whether there has been any denial of visitation; and (j) whether any party is planning on establishing a residence outside of Ohio. R.C. 3109.04(F)(1)(a)–(j).

{¶22} The magistrate conducted a thorough best interest analysis utilizing the factors in R.C. 3109.04(F)(1) in the September 1, 2016 magistrate's decision that was, then, utilized by the judge:

In determining who should be designated the legal custodian of the minor child, the court must weigh what is in his best interest. The following factors have been considered, pursuant to ORC §3109.04(F)(1)(a)-(j), as to what is in the best interest of the minor child:

a. Mother is deceased and left no instruction or will designating a custodian for the minor child. Father is incarcerated. He did file a response to Grandmother's petition, wherein he questioned whether he was the father of the child and asked for DNA testing. He indicated that his preference would be for his mother to be named legal custodian, but she is not a party to the action

b. [T.J.T.] is seven years old. He was interviewed in chambers by the court. He does have sufficient reasoning ability to express his desires regarding the allocation of parental right and responsibilities. [T.J.T.] expresses a strong desire to remain with Grandmother.

c. [T.J.T.] is very attached to Grandmother. She has been a caregiver to him throughout his life, including, at times, his primary caregiver.

[T.J.T.] is close with Grandmother's sisters and niece. Until recently, he had very little, if any, contact with Aunt and Uncle.

d. [T.J.T.] resides with Grandmother in a camper, although she is looking for an apartment. He is content with the current living situation. He is acclimated to Union Local Elementary School.

e. No evidence was presented that any party suffers physical or mental ailments. Grandmother is sixty years old. She does smoke.

f. All parties would honor court-ordered visitation. There was an issue with the parties' understanding of the temporary visitation agreement, but the same was eventually worked out between the parties and counsel. The parties seem to agree that court-ordered visitation may not be necessary. Aunt testified she would make [T.J.T.] available to relatives in Belmont County if awarded custody.

g. No party has been ordered to pay child support.

h. No evidence was presented that any party has been convicted of domestic violence or a crime against a child. Further, no evidence was presented that either party has had a child in their custody determined to be abused, neglected or dependent.

i. No party has denied visitation, after clarification of the court order.

j. No one is planning to establish a residence outside the State of Ohio. Grandmother lives in Flushing, Ohio. Aunt and Uncle live in Nelsonville, Ohio.

(9/1/16 Mag. Dec., pp. 4-5.) The record shows that the magistrate carefully considered all of the factors and all of the evidence that was both favorable and unfavorable to Appellant and Appellees. Also considered was the testimony concerning the child's relationship with both parties, including the strong bond with grandmother and the relative lack of meaningful relationship with Appellees prior to the court-ordered visitation.

**{¶23}** Although Appellant urges that a review of the *guardian ad litem* report as well as the analysis of the R.C. 3109.04(F)(1) factors in the magistrate's decision demonstrates that the evidence before the court tended towards finding in favor of custody remaining with Appellant, in order to determine the trial court abused its discretion in awarding custody to Appellees this record would have to clearly show that the decision of the trial court was arbitrary, unconscionable or unreasonable. We cannot so conclude on the basis of the record before us. The record in the instant matter reveals there was compelling evidence submitted on behalf of both parties. While the court's obvious consideration of the stability of the environment provided by Appellees is not specifically listed as a factor to consider in making a best interest determination, it is just as clearly not prohibited when making a best interest analysis. The court noted:

Aunt and Uncle have raised a son who, by all accounts, is responsible, a good student and actively involved in school activities. They have a relatively long-term marriage and stable home. Both have careers. They would be able to provide a stable, nurturing home for [T.J.T.]. However, it cannot be ignored that until recently, they had little or no relationship with [T.J.T.].

(9/1/16 Mag. Dec. p. 6.)

**{¶24}** Contrary to the holdings in *Seibert, Reinhart,* or our holding in *In re Davis, supra,* it is apparent that the trial court was not basing its decision on speculative assumptions, but rather on the present circumstances of both parties.

**{¶25}** In this matter, we are presented with a situation where both parties are tremendously concerned for the child's welfare. Appellant is clearly a bit older than the usual parental caregiver and provides much more limited material and financial security for the child but by all accounts has given a tremendous amount of emotional and psychological support to her grandchild, who has experienced a great deal of tumult. Appellees present a much more financially secure, comfortable and traditional environment for the child, but have had little meaningful connection until the instant proceedings commenced. As both parties presented compelling reasons for custody and both have drawbacks, it is apparent that this matter could have easily been decided either way. This was obviously not an easy matter to resolve. The trial court is charged with reviewing all the evidence and making its findings, however, and a great deal of discretion vests in the trial court in these matters. Our task is to

review the proceedings and determine whether the trial court abused its discretion in making such determinations. The trial court, here, ultimately concluded that the kind of stability provided by Appellees rather than the kind of stability provided by Appellant was in the child's best interest. Based on this record, we are unable to say that the trial court clearly lost its way or that this decision is patently arbitrary or capricious.

**{¶26}** Because the trial court did not clearly abuse its discretion here, Appellant's assignments of error are without merit and are overruled. The judgment of the trial court is affirmed.

DeGenaro, J., concurs.

Robb, P.J., concurs.