Delaney, J.
{¶1} Defendant-Appellant J.V. appeals the April 2, 2018 judgment entry of the Stark County Court of Common Pleas, Juvenile Division.
FACTS AND PROCEDURAL HISTORY
{¶2} The facts of this case show the consequences of the opioid epidemic for families in our state and a trial court's role in trying to reconcile the aftermath.
A Family and Addiction
{¶3} Defendant-Appellant J.V. is the mother of C.V. ("Maternal Grandmother"). Plaintiffs-Appellees P.K. and S.K. are the parents of R.K. ("Paternal Grandparents").
{¶4} C.V. and R.K. were the parents of Z.K. ("Grandchild"), born on October 23, 2012. C.V. was also the mother of L.V., born on September 14, 2005 ("Brother").
{¶5} On April 6, 2015, the age of 27, C.V. overdosed on fentanyl and died on April 11, 2015. The father of Brother was convicted of selling the fentanyl to C.V. At the time of C.V.'s death, C.V., R.K., Grandchild, and Brother had been living with Paternal Grandparents. Grandchild and Brother were at Paternal Grandparents' home with C.V. and R.K. when C.V. overdosed.
{¶6} C.V. did not leave a will naming a custodian for her children. Paternal Grandparents filed a complaint for custody of Grandchild and Brother on April 13, 2015 (Case Nos. 2015JCV00353 and 2015JCV00354). Paternal Grandparents alleged R.K. had recently completed drug treatment and was not capable of caring for Grandchild. Father of Brother could not care for Brother because he was implicated in C.V.'s death. The trial court granted temporary custody of Grandchild and Brother to Paternal Grandparents and set the matter for a hearing.
{¶7} R.K., at 31 years of age, purposefully overdosed on opioids on May 18, 2015. Brother found R.K.'s body. R.K. did not leave a will naming a custodian for Grandchild.
{¶8} On May 22, 2015, Maternal Grandmother filed a motion for temporary restraining order and emergency motion for temporary custody of Brother in Case No. 2015JCV00354. On June 1, 2015, the trial court granted Maternal Grandmother visitation with Brother. Maternal Grandmother filed a motion to intervene in Brother's case on June 9, 2015. On June 16, 2015, the trial court granted Maternal Grandmother's motion to intervene and granted her temporary custody of Brother.
An Agreed Custody Judgment Entry
{¶9} On October 30, 2015, Paternal Grandparents and Maternal Grandmother filed Agreed Judgment Entries resolving the custody issues with Grandchild and *816 Brother. As to Grandchild, Paternal Grandparents were designated legal custodians and residential parents. The parties set the parenting schedule whereby Maternal Grandmother would have parenting time with Grandchild every other weekend from Friday at 5:00 p.m. until Saturday at 6:30 p.m. Starting November 1, 2015, Maternal Grandmother would have parenting time with Grandchild every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. The parties were able to modify or alter the parenting time schedule by agreement at any time. Each party was to have access to all records maintained for Grandchild. Finally, the parties agreed that in the event that either party intended to relocate from Stark County, the parent would provide written notification to the trial court and obtain prior written approval of the other party or the trial court. As to Brother, Maternal Grandmother was named his legal custodian and residential parent. Paternal Grandparents had parenting time with Brother by agreement of the parties.
A Request for Relocation
{¶10} On February 23, 2018, Maternal Grandmother filed a motion for change of custody. Maternal Grandmother requested custody of Grandchild because she was informed Paternal Grandparents intended to relocate to Arizona with Grandchild in March 2018.
{¶11} Paternal Grandparents filed a notice of relocation to Arizona with Grandchild on February 27, 2018. Paternal Grandparents intended to relocate to Arizona for Paternal Grandmother's job. Paternal Grandmother worked for a local hospital which closed. She looked for employment in Ohio, but she was unable to find a job commensurate with her income needs. The job in Arizona fit the family's financial needs. Paternal Grandfather was retired. Paternal Grandparents' daughter lived in Texas and also planned to relocate to Arizona.
{¶12} On February 28, 2018, the trial court appointed a Guardian ad Litem to make an expedited recommendation regarding Grandchild's relocation to Arizona. The matter was set for a hearing on March 23, 2018.
The GAL Report
{¶13} The GAL report was filed on March 19, 2018. The GAL recommended it was not in Grandchild's best interests to relocate to Arizona. The GAL recommended that either Paternal Grandparents should retain custody of Grandchild and remain in Ohio or the trial court should award custody of Grandchild to Maternal Grandmother.
{¶14} The GAL's recommendation was based in part on Grandchild's relationship with Brother. Due to the trauma suffered by the children, it was determined that Brother and Grandchild should be cared for separately to better address their individual needs. At the time of C.V.'s and R.K.'s death, Brother was nine and a half years old. He was raised by addicted parents. He witnessed his mother's overdose and saw R.K.'s body after he overdosed. Brother required intensive psychological treatment to process his trauma and address his social and behavioral concerns. Grandchild was two and a half years old when his parents passed away. He had less awareness of what had occurred. The GAL observed, however, that the brothers were bonded and because of their special circumstances, they should be together to support each other. The GAL felt the brothers could not maintain their relationship if Grandchild lived in Arizona.
{¶15} The GAL's concern for continuity of the sibling relationship was based on the poor relationship between Maternal Grandmother and Paternal Grandmother.
*817 The GAL's investigation demonstrated Maternal Grandmother and Paternal Grandmother had negative feelings towards each other and because of that, did not communicate effectively about Grandchild's needs. The GAL felt if Paternal Grandparents relocated to Arizona, the limited communication between Grandparents would completely break down because of the long distance. The GAL felt that Paternal Grandmother did not consider available jobs in Ohio because the family wanted to retire to Arizona.
{¶16} The GAL acknowledged that Grandchild was bonded to Paternal Grandparents and considered them his parents. He recommended that based on the importance of the relationship between Grandchild and Brother and the poor relationship between Grandparents, Paternal Grandparents should remain in Ohio or if they chose to leave, custody should be given to Maternal Grandmother.
The Trial
{¶17} The matter came on for trial on March 23, 2018. The following evidence was adduced at trial.
{¶18} Paternal Grandparent testified he was 63 years old and was a retired social worker. He described himself as a stay-at-home parent to Grandchild. Paternal Grandparent testified he felt Grandchild considered Paternal Grandparents as his parents and Maternal Grandmother as his grandmother. He had suffered a heart attack in the past, but had stents and was in good health. Paternal Grandmother was 58 years old and in good health. She was previously employed as a registered nurse with a local hospital, but the hospital closed and her employment was terminated in February 2018. Paternal Grandmother found an employment opportunity in Bullhead City, Arizona as a house/nursing supervisor at a regional medical center. The parties sold their home in February 2018 and intended to relocate to Arizona with Grandchild. Their adult daughter lived in Texas and intended to relocate to Arizona. The intent of Paternal Grandparents was to retire in Arizona, which was a warmer climate and close to their adult daughter.
{¶19} Maternal Grandmother was 49 years old at the time of the hearing. She was employed as an instructor with a local community college teaching surgical technology. Her husband was approximately 62 years old and was an attorney. Maternal Grandmother lived in the Akron-area and Brother attended an Akron-area Catholic elementary school.
{¶20} At the time of trial, Grandchild was five and a half years old. He was enrolled in a local preschool. He exhibited some social anxiety and had some learning issues. Paternal Grandparents intended to enroll Grandchild in a Christian elementary school in Arizona.
{¶21} The Agreed Judgment Entries ordered visitation between the Grandparents and the children. Visitation with Paternal Grandparents and Brother stopped on the advice of Brother's counselor because Paternal Grandparents' home triggered Brother's trauma. Visitation with Maternal Grandmother and Grandchild was reduced because Grandchild's age-typical behaviors were disruptive to Brother's mental health recovery. Based on the reduction in visitation, Maternal Grandparent spent 21 days with Grandchild in 2018. The Agreed Judgment Entry gives Maternal Grandmother the right to access all of Grandchild's records. Maternal Grandmother did not attend Grandchild's extracurricular or school activities or medical appointments. Paternal Grandparents did not inform Maternal Grandmother of Grandchild's activities, but there was no evidence that Maternal Grandmother asked. The exchange of Grandchild between Grandparents was *818 done in the parking lot at a local store by the Grandfathers because they had less conflict with each other.
{¶22} The parties testified to an incident of conflict between Paternal Grandmother and Maternal Grandmother involving Grandchild. Based on advice from his dentist, Grandchild required dental work done under anesthesia at Akron Children's Hospital. Paternal Grandmother informed Maternal Grandmother of the procedure. On the day of the procedure, Maternal Grandmother was at Akron Children's Hospital in a teaching capacity. She encountered Grandchild in the pre-op area and he was happy to see her. Based on the encounter, Paternal Grandmother filed a HIPAA violation notice with Akron Children's Hospital and Maternal Grandmother's place of employment. Akron Children's Hospital found no HIPPA violation.
{¶23} There was an initial attempt for the entire family to engage in counseling to mediate their relationship, but the parties did not follow-up with the counselor.
The Judgment Entry
{¶24} On April 2, 2018, the trial court issued its findings of fact and conclusions of law regarding Maternal Grandmother's motion for custody and Paternal Grandparents' notice of relocation. The trial court recognized the Grandparents' significant undertaking of assuming the parenting obligations of Grandchild and Brother, especially in light of the tragic circumstances. The trial court found the Grandparents embraced their roles as parental figures, establishing bonds with the grandchild in their care and meeting their special needs. The evidence, however, showed the bond between Grandchild and Maternal Grandmother was not comparable to the parental bond between Grandchild and Paternal Grandparents. Grandchild has been with Paternal Grandparents since he was a toddler. Maternal Grandmother's interactions with Grandchild were limited, as were Grandchild's interactions with Brother. Brother was doing his own very important work to move forward. Based on the limited interaction between Maternal Grandmother and Grandchild, the trial court found the GAL's report did not address the emotional impact of a change of custody would have on Grandchild, as opposed to a relocation.
{¶25} Parental Grandparents testified the move to Arizona would be a positive move for themselves as they reach retirement age, an opportunity for increased income, and further their relationship with their daughter, Grandchild's aunt. Technology would allow Brother and Grandchild to maintain a relationship over the long distance. The trial court found it would be in the best interest of Grandchild to remain in the custody of Paternal Grandparents and relocate to Arizona.
{¶26} It is from this judgment Maternal Grandmother now appeals.
{¶27} Maternal Grandmother did not file a motion to stay the judgment. Paternal Grandparents and Grandchild have relocated to Arizona.
ASSIGNMENTS OF ERROR
{¶28} Maternal Grandmother raises three Assignments of Error:
{¶29} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT IT WAS IN THE CHILD'S BEST INTEREST TO BE RELOCATED TO ARIZONA.
{¶30} "II. THE TRIAL COURT ERRED AN ABUSED ITS DISCRETION IN DENYING THE APPELLANT'S MOTION FOR CUSTODY.
{¶31} "III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ALLOWING A PARTY TO RELOCATE
*819 A MINOR CHILD WITHOUT FIRST FILING A MOTION REQUESTING A RELOCATION."
ANALYSIS
I. RELOCATION AND MOTION FOR CHANGE OF LEGAL CUSTODY
{¶32} The matters before the trial court in this case were Maternal Grandmother's motion for change of legal custody and Paternal Grandparents' notice of relocation. The relocation of the Paternal Grandparents prompted Maternal Grandmother's motion for change of legal custody and the trial court's analysis in its judgment entry demonstrates the interrelatedness of the two pending matters. The trial court found it was in the best interests of the Grandchild to remain with Paternal Grandparents and relocate to Arizona. Based on the interrelatedness of the issues, we therefore address Maternal Grandmother's arguments together: (1) Maternal Grandmother's second Assignment of Error as to whether the trial court abused its discretion in denying her motion for change of custody and (2) Maternal Grandmother's first Assignment of Error that the trial court abused its discretion when it found it was in Grandchild's best interest to relocate to Arizona with Paternal Grandparents.
{¶33} Custody issues are some of the most difficult and agonizing decisions a trial court judge must make. The trial court judge must have wide latitude in considering all the evidence. Girdlestone v. Girdlestone , 5th Dist. Stark No. 2016CA00019, 2016-Ohio-8073, 2016 WL 7159193, ¶ 12 citing Davis v. Flickinger , 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). It is for this reason we review custody decisions under an abuse of discretion standard. Miller v. Miller , 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). In order to find an abuse of discretion, a reviewing court must find that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore , 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).
Change of Circumstances Analysis Not Required
{¶34} This case involves a request for modification of legal custody between a non-parent and a non-parent. Pursuant to R.C. 2151.23(A)(2), the juvenile court is authorized to adjudicate custodial claims brought by non-parents. In re T.J.T. , 2017-Ohio-4279, 92 N.E.3d 272, ¶ 21 (7th Dist.) citing In re Bonfield , 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241, ¶ 43. In this case, no public or private child welfare agency filed a complaint alleging that Grandchild was a dependent, neglected, or abused child. Grandchild was never adjudicated dependent, neglected, or abused. Paternal Grandparents initiated a complaint for custody and by agreed judgment entry, they were granted legal custody of Grandchild. The Ohio Revised Code does not specifically provide statutory guidance for modification of legal custody between a non-parent and a non-parent. As the kinship placement of children affected by the opioid epidemic continues to rise, the General Assembly may have to address this issue. At the present, we consider case law regarding the custodial modification between a biological parent and a non-parent holding legal custody of the child. We have held that in such circumstances, "[o]nce a juvenile court has exercised jurisdiction over a child, the court has continuing jurisdiction to determine what is in the best interests of the child. As a result, a change in circumstances is not a prerequisite to the resumption of the juvenile court's jurisdiction. * * * [T]he philosophy of requiring a *820 change of circumstances in divorce custody issues is based upon the presumption that parents are equals and must be treated as such. In a juvenile proceeding where the parties are not on equal footing, the change of circumstances standard is not applicable." In re E.Z.H. , 5th Dist. Holmes No. 12CA0015, 2013-Ohio-3494, 2013 WL 4055552, ¶ 18. A parent's interest in the care, custody, and control of his or her child is a fundamental liberty interest. In re Hockstok , 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 16. "However, where there is a custody dispute between two nonparents, no such fundamental liberty interest exists." In re J.R.P. , 2018-Ohio-3938, 120 N.E.3d 83, ¶ 26 (7th Dist.). In this case, the trial court was not required to find a change of circumstances when considering the modification of legal custody between non-parents. The trial court must conduct a best interest analysis. In re T.J.T. , 7th Dist., 2017-Ohio-4279, 92 N.E.3d 272, ¶ 21.
Best Interest Analysis
{¶35} In this case, the trial court conducted a best interest analysis to determine whether to modify legal custody. It stated in its judgment entry, "Ohio Revised Code, Chapter 3109.051 governs allocation of parenting time in the award of companionship and visitation rights to parents and others. Provision (D) of this section specifically provides that the Court has the authority to award parenting time to grandparents, relatives, or other persons." The trial court went on to conduct a best interest analysis utilizing the factors of R.C. 3109.051(D).
{¶36} Modification of visitation rights is governed by R.C. 3109.051. Collier v. Collier , 7th Dist. Harrison No. 17 HA 0010, 2018-Ohio-3596, 2018 WL 4276121, ¶ 19 citing Braatz v. Braatz , 85 Ohio St.3d 40, 44-45, 706 N.E.2d 1218 (1999). It specifically considers the interests of non-parents. R.C. 3109.051(D) recites 16 factors for the trial court to consider to determine whether or not a modification in visitation is in the best interests of the child:
(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;
(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
(4) The age of the child;
(5) The child's adjustment to home, school, and community;
(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;
(7) The health and safety of the child;
(8) The amount of time that will be available for the child to spend with siblings;
*821 (9) The mental and physical health of all parties;
(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;
(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;
(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
(14) Whether either parent has established a residence or is planning to establish a residence outside this state;
(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;
(16) Any other factor in the best interest of the child.
{¶37} Modification in the allocation of parental rights and responsibilities is governed by R.C. 3109.04. The trial court may adjudicate custodial claims by conducting a best interest analysis in accordance with the factors set forth in R.C. 3109.04(F)(1) :
(a) The wishes of the child's parents regarding the child's care;
(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may *822 significantly affect the child's best interest;
(d) The child's adjustment to the child's home, school, and community;
(e) The mental and physical health of all persons involved in the situation;
(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
{¶38} Maternal Grandmother argues the trial court committed a reversible error by utilizing the best interest factors in R.C. 3109.051(D) instead of those in R.C. 3109.04(F)(1) to determine whether to modify the legal custody arrangement. We agree it was error for the trial court to use the best interest factors of R.C. 3109.051(D), but we find the error to be harmless.
{¶39} In all custody matters, the paramount concern is the best interest of the child. In re Adoption of Kreyche , 15 Ohio St.3d 159, 162, 472 N.E.2d 1106 (1984). Because the best interest of the child is the paramount concern, the juvenile court should consider the totality of the circumstances affecting the best interests of the child. In re P.G., 12th Dist. Warren Nos. CA2015-01-009, CA2015-01-010, 2016-Ohio-1433, 2016 WL 1296770, ¶ 64 citing In re M.A., 12th Dist. Butler No. CA2011-02-030, 2012-Ohio-545, 2012 WL 441142, ¶ 16.
{¶40} We have compared the factors listed in R.C. 3109.051(D) to the factors listed in R.C. 3109.04(F)(1). The statutory factors in R.C. 3109.051(D) and 3109.04(F)(1) are almost identical, but R.C. 3109.051(D) provides seven additional factors for the trial court to consider in determining *823 the best interest of the child. R.C. 3109.051(D)(2), (3), (4), (7), (8), (15), and (16) are additional best interest factors for the trial court to consider not found in R.C. 3109.04(F)(1). As we noted above, the Ohio Revised Code does not directly address issues surrounding non-parent legal custody. R.C. 3109.051(D) more specifically addresses the best interests of the child and the relationship between the child and the non-parent such as a grandparent, relative, or other person, where R.C. 3109.04(F)(1) considers modification of decrees allocating parental rights and responsibilities.
{¶41} Considering the similarity between R.C. 3109.051(D) and 3109.04(F)(1), the additional factors in R.C. 3109.051(D), the lack of specific statutory guidance for a custody modification between non-parents, and the trial court's ability to consider the totality of the circumstances to determine the best interests of the child, we find it was harmless error in this case for the trial court to utilize the best interest factors in R.C. 3109.051(D).
{¶42} The trial court found it was in the best interest of Grandchild to remain with Paternal Grandparents. Of most importance to the trial court was the relationship between Grandchild and his Grandparents. The trial court considered the greater interaction and interrelationship shared between Grandchild and Paternal Grandparents and the limited interaction and interrelationship between Grandchild and Maternal Grandmother. There was no dispute in evidence that Grandchild spent the majority of his life with Paternal Grandparents where they took on a parental role for Grandchild. The trial court noted the GAL report did not focus on the emotional impact on Grandchild if he was removed from the care of Paternal Grandparents. There was no dispute that both Maternal Grandmother and Paternal Grandparents would be suitable caregivers for Grandchild, but we agree with the trial court that there was a lack of evidence in the record as to how Grandchild would cope with being removed from the care of Paternal Grandparents.
{¶43} The trial court's analysis of Grandchild's best interests incorporated the Paternal Grandparents' choice to relocate with Grandchild to Arizona. R.C. 3109.051(D)(2) states the trial court shall consider the geographical location of the residence of the non-parent and the distance between the non-parent's residence and the child's residence in determining the best interest of the child and companionship with a non-parent. Under R.C. 3109.051(D)(14), the trial court should examine whether either parent has established a residence or is planning to establish a residence outside the state. See also R.C. 3109.04(F)(1)(j). The evidence demonstrated the Paternal Grandparents' choice to relocate to Arizona was due to an employment change, to be close Grandchild's Aunt, and the reality that Paternal Grandparent was retired and Paternal Grandmother was near retirement age and they wished to enjoy their retirement in a better climate. Paternal Grandparents enrolled Grandchild in a Christian elementary school for kindergarten.
{¶44} An important issue to the GAL was the sibling relationship between Grandchild and Brother. The sibling relationship is a factor in determining the best interest of the child. The GAL recommended that based on their shared trauma, the siblings needed each other for support. The GAL was justifiably concerned that the distance and the poor relationship between Grandparents would erode the sibling relationship. The evidence in this case, however, did not demonstrate a solid relationship between siblings, which is based on these tragic *824 circumstances. There is an approximate five-year age difference between the siblings. The impact of the trauma they suffered was very dependent on their age, i.e. Brother remembers more. The record in this case showed the siblings were at very different stages in their trauma recovery and as part of his recovery, Brother needed to work independently from Grandchild. A future relationship between Brother and Grandchild is important, but the trial court is tasked to examine the present circumstances of the child, not on what possibly may happen in the future. In re Davis , 7th Dist. No. 02-CA-95, 2003-Ohio-809, 2003 WL 405540, ¶ 19 ; Seibert v. Seibert , 66 Ohio App.3d 342, 584 N.E.2d 41 (12th Dist.1990). With technology, the trial court found the siblings could maintain their relationship.
{¶45} Based on the totality of the circumstances, the trial court could not find that modification of legal custody was preferable to relocation. The trial court found the harm of separation between Paternal Grandparents and Grandchild outweighed the speculative harm of relocation. We have held that "* * * since a child is almost always going to be harmed to some extend by being moved, the non-custodial parent should not be able to satisfy his or her burden simply by showing that some harm will result; the amount of harm must transcend the normal and expected problems of adjustment." Stein v. Anderson , 5th Dist. Tuscarawas No. 2009 AP 08 0042, 2010-Ohio-18, 2010 WL 27550, ¶ 13 quoting Schiavone v. Antonelli , 11th Dist. Trumbull No. 92-T-4794, 1993 WL 548034 (Dec. 10, 1993).
{¶46} The facts of this case are tragic. There is no question Paternal Grandparents and Maternal Grandmother love Grandchild and are concerned for Grandchild's welfare. Both parties and the GAL presented compelling reasons for custody and this was not an easy matter to resolve. Because custody decisions some of the most difficult decisions to judge, the trial court is given a great deal of discretion to make a determination. The role of the appellate court is to review the proceedings and determine if the trial court abused its discretion. The evidence in this case supports the trial court's determination that it was in Grandchild's best interests to remain with Paternal Grandparents and relocate to Arizona. We find no abuse of discretion to deny the motion for change of legal custody and permit relocation to Arizona.
{¶47} Maternal Grandmother's first and second Assignments of Error are overruled.
II. NOTICE OF RELOCATION
{¶48} Maternal Grandmother contends in her third Assignment of Error that the trial court erred when it allowed Paternal Grandparents to relocate without first filing a motion requesting a relocation.
{¶49} The Agreed Judgment Entry granting Parental Grandparents legal custody of Grandchild contains a provision as to relocation. It states:
The parties agree that in the event either party intends to relocate from Stark County that parent shall provide written notification of said intent to the Court, as required in O.R.C. § 3109.051(G), and obtain the prior written approval of the other party or of the Stark County Court of Common Pleas, or schedule a hearing as necessary.
{¶50} Paternal Grandparents filed a notice of relocation on February 27, 2018. The trial court held a hearing on the notice of relocation with the motion to modify legal custody.
*825 {¶51} The parties were able to present their arguments and evidence as to why the trial court should not approve Paternal Grandparents' relocation outside of Stark County. It was within the purview of the trial court to deny the motion to relocate, allow the Paternal Grandparents to relocate and grant legal custody of Grandchild to Maternal Grandmother, or allow the Paternal Grandparents to relocate with Grandchild.
{¶52} Maternal Grandmother's third Assignment of Error is overruled.
CONCLUSION
{¶53} The judgment of the Stark County Court of Common Pleas, Juvenile Division is affirmed.
Wise, John, P.J. and Hoffman, J., concur.