[Cite as *In re J.S.*, 2024-Ohio-3337.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

    J. S.

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. John W. Wise, J.
Hon. Andrew J. King, J.

Case No. 24 CA 003

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Juvenile Division, Case No. 22 N 099 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 30, 2024 |

APPEARANCES:

For Appellant Mother

ERIC D. HALL
P.O. Box 232
Medina, Ohio 44258

For Appellees R.G. and A.G.

DAVID M. HUNTER
244 West Main Street
Loudonville, Ohio 44842

For Appellee Children's Services

ROBERT K. HENDRIX
ASSISTANT PROSECUTOR
164 East Jackson Street
Millersburg, Ohio 44654

*Wise, J.*

{¶1} Mother-appellant C.G. appeals the January 31, 2024 judgment entry of the Holmes County Court of Common Pleas, Juvenile Division, granting legal custody of J.S. to his great-grandparents.

## FACTS AND PROCEDURAL HISTORY

{¶2} On November 14, 2022, seven-year-old J.S.[DOB 3/22/2015] was adjudicated a neglected child by the Holmes County Common Pleas Court, Juvenile Division. Mother-appellant stipulated to the finding and father did not attend the hearing. Later, a no-contact order was placed on father. Father was removed from the case plan in January, 2023 because of his lack of involvement and failure to maintain contact with Holmes County Child Services (HCCS). He is not involved in this appeal.

{¶3} J.S. was placed under protective supervision with the HCCS but remained in the custody of C.G. and a case plan was adopted.

{¶4} Meanwhile, J.S. continued in the placement of his great-grandparents where he had been living for the majority of his life. Mother resided with the great-grandparents at the time until she moved out in December 2023, to live with her girlfriend.

{¶5} On June 2, 2023, great-grandparents filed a motion seeking legal and temporary custody of J.S. On June 13, 2023, temporary custody of J.S was awarded to his great-grandparents and mother's visits with J.S. were modified to supervised visitation.

{¶6} On January 8, 2024, HCCS moved to terminate temporary custody and grant legal custody to great-grandparents pursuant to their pending motion. The motion for legal custody came on for evidentiary hearing. Mother-appellant opposed the granting of the motion, instead

requesting that the great-grandparents continue to hold temporary custody and allow her to continue working on her case plan.

{¶7} The Guardian ad Litem (GAL) filed a report recommending that the great-grandparents be granted legal custody of J.S. The GAL noted that during his seven visits with J.S., he stated that he is happy living with his great-grandparents.

{¶8} Four witnesses testified for the HCCS and the great-grandparents. Mother-appellant testified on her own behalf.

{¶9} The following facts were adduced from the hearing.

{¶10} Jennifer Fire, supervisor of the Goodwill Parenting Program, testified that as part of her case plan, mother was ordered to attend parenting classes with the Goodwill Parenting Program located in Canton, Ohio. It serves eight counties and is an intensive ten-week, five day, two-and-one-half-hour-a-day program. Monday through Thursday is instruction based and Friday is supervised visitation with parent and child.

{¶11} Mother-appellant began the program on September 5, 2023 and ended it in November, 2023. Fire described mother's attitude for most of the program as closed-off, argumentative and defiant. She completed zero percent of her individual goals. Her interactions with her son were often inappropriate, often yelling at him and wanting to put him in "timeouts".

{¶12} Mother struggles with reading, writing and comprehension. Fire noted that the program made special accommodations for her needs, but mother was still unsuccessful.

{¶13} At the conclusion of the ten-week period, mother earned a "certificate of noncompliance" – the lowest certificate that can be achieved. "[S]he's not safe for herself and potentially not safe for [J.S.]."

**{¶14}** It was Fire's recommendation that mother not be reunified with J.S without supervision.

**{¶15}** No home visit was done because mother was living with her new boyfriend's family and the home was not available, according to mother, to house J.S. Mother was looking for independent housing and had registered her name for placement in subsidized housing.

**{¶16}** Mother's case plan was first developed on August 22, 2022. Her goals included domestic violence risk assessment which was not completed at time of the hearing, Goodwill parenting program which was completed unsuccessfully, psychological evaluation, mental health assessment and individual counseling.

**{¶17}** Her psychological evaluation was completed and it was recommended that she not receive custody of J.S. She had a mental health evaluation and was in individual counseling on a biweekly basis. Anger management was recommended as she was observed throwing a chair at her grandfather and throwing a cell phone at her grandmother and hitting her leg.

**{¶18}** The child, J.S., was being evaluated for autism and dyslexia.

**{¶19}** Mother testified that she is working on her case plan, and agrees to great-grandparents continuance of temporary custody but not legal custody. Meanwhile, she wants more visitation time with J.S.

**{¶20}** The great-grandfather, R.G., testified that J.S. is like a son to him. J.S. helps with chores around the house and loves to play soccer. The great-grandmother, A.G., testified that J.S. has lived with them his whole life except for six months.

**{¶21}** They both understood the meaning of legal custody and also understood that mother retains residual rights to J.S.

**{¶22}** At the conclusion of the hearing, the trial court took the matter under advisement and requested written arguments from the parties.

**{¶23}** On January 31, 2024, the trial court issued its judgment entry granting legal custody to the great-grandparents of J.S. The court noted that during the sixteen months this case began, the great-grandparents "have demonstrated they can provide a happy, safe home for (J.S.) and in particular the stability and routine he needs." *Judgment Entry, Jan. 31, 2024 at 7.*

**{¶24}** Applying the best interest factors contained in R.C. 2151.414(D)(1)(a-e), the trial court concluded that it is in the best interests of J.S. to remain in the custody of his great-grandparents and for them to be awarded legal custody.

**{¶25}** It is from this judgment entry that mother now appeals assigning one assignment of error:

## ASSIGNMENT OF ERROR

**{¶26}** "I.  THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING LEGAL CUSTODY OF J.S. TO [R.G AND A.G.] WHEN APPELLANT DID NOT CONSENT TO LEGAL CUSTODY."

## LAW AND ANALYSIS

*Standard of Review*

**{¶27}** We review the award of legal custody under an abuse of discretion standard. *In re: J.W.,* 2021-Ohio-2917, ¶ 39 (5th Dist.). Abuse of discretion connotes more than an error of law or judgment. Rather, it implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). The trial court is given wide latitude in considering all the evidence in proceedings involving the care and custody of

children. Therefore, deferential review in a child custody determination is especially crucial "where they may be much evident in the parties' demeanor and attitude that does *not* translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419 (1977).

**{¶28}** The standard of review in legal custody proceedings is preponderance of the evidence. *In re: S.D.,* 2013-Ohio-5752, ¶ 32 (5th Dist.). Preponderance of the evidence is defined as "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it." *In re: A.W.G.,* 2004-Ohio-2298, FN. 1, (12th Dist.).

**{¶29}** As found by the trial court, the focus is on the best interests of the child. R.C. 2141.414(D) sets forth factors in determining the best interest of the child. While the factors are related to permanent custody decisions, Ohio courts have adopted such standards in making legal custody decisions. *In re: S.D.,* 2013-Ohio-5752, at ¶ 33 (5th Dist.).

**{¶30}** Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. *In re: J.W.,* 2021-Ohio-2917, ¶ 42 (5th Dist.) citing *In re: M.T.,* 2020-Ohio-5493, ¶ 20 (9th Dist.). In addition, the best interest factors set forth in R.C. 3109.04(F)(1) may be used by the juvenile court for guidance. *Id.* at ¶ 20. These factors include the child's adjustment to his or her environment, the mental and physical health of all persons involved, the parents' history of providing support and honoring companionship orders, whether a parent plans to or has established a residence outside of Ohio; and certain indicia of violence, abuse, or neglect in any household involved. R.C. 3109.04(F)(

*Best interests of J.S.*

**{¶31}** In this case, the trial court's judgment entry demonstrates that it considered the best interests factors outlined in the statutes and determined that it was in the best interests of J.S. to remain in the custody of his great-grandparents and for them to be awarded legal custody.

**{¶32}** J.S. has lived with his great-grandparents for the majority of his life and has thrived under their care. R.G. testified that he thinks of J.S. as his son. The great-grandparents provide him comfort, support and stability. J.S. attends school regularly, is in the Boy Scouts and plays soccer. The evidence demonstrated that the great-grandparents use appropriate discipline with J.S.

**{¶33}** J.S. told the GAL on at least seven occasions that he wants to remain with his great-grandparents.

**{¶34}** As found by the trial court, legal custody to the great-grandparents of J.S. is "clearly in his best interests to maintain." *Judgment Entry, Jan. 31, 2024, at 7.*

**{¶35}** Mother-appellant argues that the trial court abused its discretion by not granting temporary custody of J.S to great-grandparents instead of legal custody. Mother argues that she was engaged in completing her case plan and just needed more time to complete it.

**{¶36}** A trial court's decision to grant or deny an extension of temporary custody is a discretionary one. R.C. 2151.415(D)(1) and (2). Pursuant to R. C. 2151.415(D)(1), a trial court can extend temporary custody for six months only if it finds, by clear and convincing evidence, (1) that such an extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension. *In re. S.D.,* 2013-Ohio-5752, at ¶ 41 (5th Dist.).

**{¶37}** As noted by the trial court, mother stipulated to J.S. being declared a "neglected child" under R.C. 2151.03(A)(2) in November, 2022 and a case plan was developed by HCCS for her to reunite with J.S.

**{¶38}** At the time of the evidentiary hearing in January, 2024, mother had not completed her case plan. She failed the Goodwill Parenting Program and received a certificate of non-compliance. The supervisor of the Program testified that she could not recommend placement with J.S. or even unsupervised visitation.

**{¶39}** She had not completed the domestic violence assessment ordered as a result of the allegations of violence outlined in the dependency complaint. So, too, while the matter was pending, mother exhibited acts of violence towards the great-grandparents.

**{¶40}** Mother received a psychological assessment, and the counselor opined that she was not able to independently parent J.S.

**{¶41}** Importantly, mother did not have suitable housing for J.S. and would not allow HCCS to complete a home inspection of her current residence with her new boyfriend's family. While mother testified she had applied for subsidized housing in Wayne County, there was no evidence of when or where she would obtain independent housing.

**{¶42}** As to visitation with J.S., the testimony from social workers revealed that mother is not capable at the present time of having unsupervised visitation with J.S. She was observed yelling at J.S. during the visits, failing to show empathy and giving him inappropriate presents such as gel guns designed for persons fourteen years of age and older.

**{¶43}** The trial court concluded that J.S. is in need of a legally secure permanent placement and that mother has not been and will not be able to provide that legally secure permanent placement. *Judgment Entry, Jan. 31. 2024 at 10.* "The trial court is tasked to examine

the present circumstances of the child, not on what possibly may happen in the future." *P.K. v. J.V.* 2018-Ohio-5383, ¶ 44, (5th Dist.) citing *In re: Davis,* 2003-Ohio-809, ¶ 19 (7th Dist.).

**{¶44}** In this case, we find no abuse of discretion to award legal custody of J.S. to the great-grandparents, R.G. and A.G.

**{¶45}** Mother-appellant's sole assignment of error is overruled.

## CONCLUSION

**{¶46}** The judgment of the Court of Common Pleas, Juvenile Division, Holmes County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

King, J., concur.

JWW/kt 0827