[Cite as *In re A.M.*, 2019-Ohio-1578.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. John W. Wise, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| IN RE A.M. | : | Hon. Earle E. Wise, Jr., J. |
|  | : |  |
|  | : | Case Nos. 18-CA-83 & 18-CA-85 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Licking County Court of
                             Common Pleas, Juvenile Division Case
                             No. F2015-0118

JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      April 22, 2019

APPEARANCES:

For Parents-Appellants:              For LCDJFS - Appellee:

TONIA R. WELKER                      WILLIAM C. HAYES
22 E. Main Street                    LICKING COUNTY PROSECUTOR
P.O. Box 598
Centerburg, OH 43011                 JEFFREY BOUCHER
                                     20 S. Second St., 4th Floor
                                     Newark, OH 43055

*Delaney, J.*

{¶1}   Appellants Mother and Father appeal the August 21, 2018 judgment entry of the Licking County Court of Common Pleas, Juvenile Division granting permanent custody of their child to Appellee Licking County Department of Job and Family Services.

## FACTS AND PROCEDURAL HISTORY

{¶2}   A.M., born on January 14, 2015, is the child of N.M. ("Mother") and M.M. ("Father"). Mother and Father are not married.

## The Complaint

{¶3}   On March 12, 2015, A.M. was removed from Mother's home by an ex parte order of removal and placed in the emergency shelter care custody of Licking County Department of Job and Family Services ("LCDJFS"). LCDJFS became involved because Mother left A.M. in the care of someone not in position to care for the child and Mother and Father could not be located.

{¶4}   An adjudicatory hearing was held on May 26, 2015. Based upon the agreement of the parties, the evidence presented, and the recommendation of the Guardian ad Litem, A.M. was found to be a dependent child. A.M. was placed in the temporary custody of LCDJFS. Father was not present at the hearing because he was incarcerated in prison due to a felony sex offense.

{¶5}   LCDJFS established a case plan for Mother and Father. The case plan established two primary goals. First, the parents were to meet A.M.'s basic needs. This included maintain stable housing, maintain a stable income, complete an approved parenting program, and write a plan on how A.M. would be supervised in their homes. The second goal was to address their mental health needs. Mother and Father were

required to attend counseling, follow recommendations of psychiatrists, complete drug screens, stay away from unsafe people, and sign releases. Of paramount concern was Mother's and Father's mental health. Mother was diagnosed with bipolar I disorder, borderline personality disorder, post-traumatic stress syndrome, anxiety, and depression. Father was diagnosed with schizophrenia and had multiple suicide attempts.

{¶6}   A.M. was placed in a foster to adopt home in December 2015.

{¶7}   LCDJFS filed a motion for permanent custody on February 3, 2016. A hearing was held on May 26, 2016. The trial court denied the motion and temporary custody was extended until September 12, 2016.

{¶8}   On August 11, 2016, LCDJFS filed a second motion for permanent custody. At the hearing on October 6, 2016, the parties agreed to continue the permanent custody hearing to January 6, 2017.

{¶9}   LCDJFS filed a motion for second extension of temporary custody. In an agreed judgment entry on January 5, 2017, temporary custody was extended to March 12, 2017.

{¶10} On February 9, 2017, LCDJFS filed a third motion for permanent custody. A hearing was scheduled for April 25, 2017, which was continued to August 1, 2017. The hearing was continued again to October 10, 2017.

{¶11} Foster parents filed a motion for legal custody on July 5, 2017.

{¶12} The hearing on the motion for permanent custody was held on October 10, 2017, October 11, 2017, and December 19, 2017. The following evidence was adduced at the hearings.

**Mother**

{¶13} At the beginning of the case, Mother did not have permanent housing. Through the Muskingum County Children Services, Mother was able to obtain Section 8 housing in August 2016. Mother lived in the apartment with her son, born March 2017. There were no concerns for Mother's care of her son.

{¶14} T.C. is Mother's boyfriend and father of Mother's son. T.C. has a 2014 conviction for domestic violence, a fifth-degree felony, and a 2015 conviction for domestic violence, a fourth-degree felony. T.C. was released from prison in March 2016. Mother denied living with T.C. but by November 2017, T.C.'s name was on the apartment lease.

{¶15} Mother struggled to maintain stable employment during the entirety of the proceedings. The longest Mother stayed at a position was four months, leaving when her hours were cut. At the time of the hearing in October, Mother was working at a fast-food restaurant. In December 2017, she was training for a position with Spectrum cable.

{¶16} Mother was diagnosed with bipolar I disorder, borderline personality disorder, post-traumatic stress syndrome, anxiety, and depression. Mother was receiving mental health treatment from Allwell Behavioral Health in Muskingum County starting in April 2016. Allwell provided Mother with a therapist, case manager, and psychiatrist. Mother received therapy and medication to treat her mental health disorders. The Allwell case manager assisted Mother with budgeting and other life planning issues. Catherine Weber, case manager with LCDJFS assigned to A.M., expressed concerns with Mother's commitment to mental health services. Mother's case managers with LCDJFS observed that Mother had difficulty maintaining consistency is all areas of her life. When Mother was steady with her mental health treatment, other aspects of her life suffered. When

Mother was employed, she did not maintain her mental health treatment or visitation with A.M. After the October 2017 hearings, Mother recommitted to her mental health treatment. Mother contended that she completed her case plan requirements in January 2017. Weber testified there was a difference between marking the services off the case plan versus benefiting and changing behaviors and lifestyle as a result of the services.

{¶17} Since the beginning of the case, Mother had two-hour, once-a-week, supervised visitation with A.M. In the first year, Mother missed 25% of the visits. LCDJFS did not move Mother from supervised visitation due to Mother's inconsistent visitation. Mother's failure to attend visitations was often due to transportation issues. Weber testified A.M. was not bonded with Mother. The staff observed that half-way through the visits, A.M. would pack her backpack and stand by the door, ready to leave. After her son was born, Mother struggled to balance the visit with two children. T.C. attended a few visitations but he did not participate in the visitation.

{¶18} Mother rarely communicated with the foster parents regarding A.M.

**Father**

{¶19} Father had not had any contact with A.M. since March 2016 pursuant to the trial court's order to suspend visitation. Weber testified Father had been diagnosed with schizophrenia and had attempted suicide. Father experienced intermittent homelessness. After his hospitalization, Father lived with his parents. By the December 2017 hearing, Father had moved into an apartment.

{¶20} LCDJFS considered Father's parents for relative placement of A.M. but determined it would not be appropriate. Father's parents lived in a two-bedroom home. Father was living with his parents at the time and there wasn't physical room for A.M.

{¶21} Throughout the proceedings, Father did not argue he should be given custody of A.M. Father supported Mother's position that the motion for permanent custody should be denied and A.M. placed in Mother's custody.

**A.M.**

{¶22} A.M. has been placed with her foster to adopt family since December 2015. The foster family has two parents, three adopted children, and another foster infant. The foster mother works at home.

{¶23} A.M. is bonded with her foster parents and calls them "Mommy" and "Daddy." Foster mother communicates with the parents of the children that are placed in her care, but she has rarely communicated with Mother.

{¶24} A.M. does not have any special needs, either health or learning.

**Guardian ad Litem**

{¶25} The original Guardian ad Litem assigned to the case withdrew from the case in October 2016 due to health reasons. A new GAL was appointed.

{¶26} Foster mother testified the new GAL met with A.M. and the foster family twice since October 2016. The visits were approximately 15 minutes long.

{¶27} Weber testified the GAL would not work or communicate with her.

{¶28} The GAL recommended A.M. should be placed with Mother.

**Magistrate's Decision**

{¶29} The magistrate issued his decision on March 29, 2018. The magistrate found LCDJFS made reasonable efforts to achieve reunification and to find a permanent placement for A.M., but the clear and convincing evidence showed Mother and Father were incapable of meeting A.M.'s needs. The magistrate considered the GAL's

recommendation but found it was not in the best interests of A.M. to be placed with parents. The magistrate recommended permanent custody of A.M. be awarded to LCDJFS.

{¶30} Mother filed objections to the magistrate's decision on April 12, 2018. Father filed a motion supporting Mother's objections.

{¶31} On August 21, 2018, the trial court overruled the objections and approved the magistrate's decision.

{¶32} It is from this judgment entry Mother and Father now appeal.

## ASSIGNMENTS OF ERROR

{¶33} Mother and Father raise two Assignments of Error:

{¶34} "I. THE TRIAL COURT ERRED BY GRANTING THE STATE'S MOTION FOR PERMANENT CUSTODY AS THE FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. MOTHER WAS COMPLIANT WITH HER CASE PLAN, THERE WAS RELATIVE PLACEMENT AVAILABLE, AND A LEGAL CUSTODY MOTION PENDING, ALL OF WHICH WERE LEGALLY SECURE PLACEMENTS THAT COULD HAVE BEEN ACHIEVED WITHOUT A GRANT OF PERMANENT CUSTODY TO THE AGENCY.

{¶35} "II. THE TRIAL COURT ERRED BY FAILING TO CONSIDER THE CHILD'S WISHES THROUGH THE GUARDIAN AD LITEM PURSUANT TO R.C. 2151.414(D)(1)(B) AND DID NOT MAKE A FINDING THAT THE CHILD WAS TOO IMMATURE TO EXPRESS HER WISHES."

**ANALYSIS**

**I.**

{¶36} In their first Assignment of Error, Mother and Father contend the trial court erred in granting permanent custody of A.M. to LCDJFS. We disagree.

{¶37} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶38} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶39} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶40} Pursuant to R.C. 2151.414(B)(1), the trial court may grant permanent custody of a child to a movant if the court determines at the hearing, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. * * * *.

{¶41} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (e) is present before proceeding to a determination regarding the best interest of the child.

{¶42} Mother and Father both acknowledge in their appellate briefs that A.M. has been in the temporary custody of LCDJFS for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d). The adjudicatory hearing was held on May 26, 2015 and A.M. was placed in the temporary custody of LCDJFS. For various reasons, the parties agreed to extend LCDJFS's temporary custody. The motion for permanent custody was filed on February 9, 2017 and heard in October 2017. The magistrate's

decision was filed on March 29, 2018. As of the date of the magistrate's decision, A.M. had been in the temporary custody of LCDJFS for 34 months.

{¶43} The trial court also determined that pursuant to R.C. 2151.414(B)(1)(a) A.M. could not be placed with Mother or Father within a reasonable time or should not be placed with parents. Mother contends, and Father supports her argument, that the trial court's finding was against the manifest weight of the evidence and A.M. should be placed with Mother.

{¶44} Mother argues she met her case plan requirements in obtaining stable housing, stable income, completed a parenting program, and received mental health treatment. We agree the facts show Mother complied with her case plan requirements over a three-year period, but the facts demonstrated Mother was not consistent in independently applying the knowledge gained from her case plan services during those three years in order to reunify with A.M. Mother's caseworkers testified Mother's real-life application of her case plan was sporadic. Mother was unable to maintain any one job for very long. She missed multiple visitations with A.M. Mother's boyfriend had two felony convictions for domestic violence. Mother struggled to balance the important elements of her life, working and her mental health.

{¶45} Mother states the trial court could have considered other placement arrangements rather than permanent custody to LCDJFS. First, Mother states the trial court did not consider relative placement. Evidence was presented that LCDJFS completed a home study with Father's parents, the only viable relative placement option for A.M. Weber testified that Father's parents' home was not an option because it was a two-bedroom home and Father was living in the home. Father was barred by court order

from visiting A.M. Second, Mother states the trial court did not consider the foster parents' motion for legal custody. Foster mother testified they filed a motion for legal custody as a "safety net" for A.M. They felt adoption was the best option for A.M. because legal custody did not offer A.M. stability due to continued visitation.

{¶46} Pursuant to R.C. 2151.414(D)(1), in determining the best interest of a child in a permanent custody proceeding, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period * * * * ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. * * * *.

{¶47} The magistrate found it was in the best interest of A.M. to terminate all parental rights and place A.M. in the permanent custody of LCDJFS. The most significant

best interest factor to the trial court was that A.M. has been in the temporary custody of LCDJFS for approximately three years while Mother and Father tried to complete their case plan goals. The evidence demonstrated A.M. was not bonded with Mother or Father. A.M. was bonded with her foster family.

{¶48} The GAL recommended A.M. be returned to the custody of Mother. The magistrate rejected the GAL's recommendation because it was not in accordance with the best interest factors or supported by the evidence. The trial court is not required to follow a GAL's recommendation; it has discretion to follow or reject it. *Pasco v. Pasco*, 5th Dist. Delaware No. 2018 CAF 06 0047, 2019-Ohio-1099, citing *Clyburn v. Gregg*, 4th Dist. Ross No. 11CA3211, 2011–Ohio–5239, ¶ 47; *Hammons v. Hammons*, 5th Dist. Delaware No. 13 CAF 07 0053, 2014–Ohio–221, ¶ 12.

{¶49} After three years, A.M. needs legally secure placement. We find no error for the trial court to find it was in the best interest of A.M. to terminate all parental rights and to place the child in the permanent custody of LCDJFS.

{¶50} The first Assignment of Error is overruled.

**II.**

{¶51} In their second Assignment of Error, Mother and Father contend the trial court did not consider the child's wishes as expressed through the GAL pursuant to R.C. 2151.414(D)(1)(b).

{¶52} The GAL believed Mother had done everything asked of her and should be reunited with A.M. The evidence in this case showed the GAL had limited communication with the LCDJFS caseworkers and the foster family caring for A.M. The GAL observed A.M. during Mother's visitation. Halfway through the visitations, multiple witnesses

testified A.M. would pack her belongings and stand at the door, ready to leave. The GAL did not discuss the case with A.M. due to her young age.

{¶53} We find no abuse of discretion for the trial court to find the evidence did not support the GAL's recommendation. It was in the best interest of A.M. to be placed in the permanent custody of LCDJFS.

{¶54} The second Assignment of Error is overruled.

**CONCLUSION**

{¶55} The judgment of the Licking County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.