[Cite as *In re J.W.*, 2021-Ohio-2917.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. John W. Wise, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : | Hon. Earle E. Wise, Jr., J. |
| IN RE J.W. | : |  |
|  | : | Case No. 2021 CA 0007 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Richland County Court
                                                            of Common Pleas, Juvenile Division,
                                                            Case No. 2018-DEP-00040

JUDGMENT:                                      AFFIRMED

DATE OF JUDGMENT ENTRY:          August 24, 2021

APPEARANCES:

For Appellant-Maternal Grandmother:          For Appellee-Father:

JOHN A. BOYD                                          JEFFREY R. STIFFLER
1 Marion Ave., Suite 204                           The Heck Law Offices, Ltd.
Mansfield, OH 44903                               One Marion Ave., Suite 215
                                                            Mansfield, OH 44903

                                                            For Appellee-RCCSB:

                                                            TIFFANY D. BIRD
                                                            731 Scholl Road
                                                            Mansfield, OH 44907

*Delaney, J.*

{¶1} Appellant-Maternal Grandmother appeals the December 29, 2020 judgment entry of the Richland County Court of Common Pleas, Juvenile Division awarding legal custody of the minor child, J.W. to Paternal Grandparents.

## FACTS AND PROCEDURAL HISTORY

### The Relationships

{¶2} A.H. ("Mother") and J.W. ("Father") are the biological parents of J.W. ("Child"), born on March 5, 2016. J.S. and S.S. are the Maternal Grandparents of the Child. Prior to this appeal, Maternal Grandfather passed away. J.H. and D.H. are the Parental Grandparents of the Child.

{¶3} Mother and Father were not married and never lived together. At the time of the Child's birth, Mother had three children and Father had one child. Mother's oldest child was already placed in the custody of Maternal Grandparents, but moved out when she turned 18 years old. Mother's other two children were placed in the legal custody of their father. Mother was the custodial parent of the Child.

{¶4} The following is but a summary of the contentious relationship between Mother and Father, which has impacted their families. The custodial history of the Child demonstrates how the parties and the trial court have attempted to mitigate the consequences of the parents' choices in order to determine the best interests of the Child.

### The Placements

{¶5} On February 15, 2018, the Richland County Children Services Board ("RCCSB") filed a complaint alleging the Child was a dependent child due to Mother's history of substance abuse and domestic violence between Mother and Father. Maternal

Grandparents were willing to care for the Child because they were already caring for one of Mother's older children. The trial court placed the Child in the temporary custody of Maternal Grandparents as an interim order on February 21, 2018. On May 29, 2018, the Child was adjudicated a dependent child.

{¶6} On August 30, 2018, after an allegation of domestic violence in Maternal Grandparents' home, the trial court ordered the Child be placed with Father, placed in daycare for at least 20 hours per week, or placed in foster care. Mother and Father both filed motions to have the Child placed in their custody. The Child ultimately stayed in the temporary custody of Maternal Grandparents.

{¶7} After a dispositional hearing, the trial court placed the Child in the temporary custody of Maternal Grandparents with protective supervision to RCCSB. Mother was granted visitation with the Child to be supervised by Maternal Grandparents. Father was granted unsupervised parenting time. (Magistrate's Decision, Oct. 30, 2018). Paternal Grandparents facilitated visitation with Father due to the negative relationship between Father and Maternal Grandparents.

{¶8} On March 1, 2019, RCCSB filed a motion for disposition. It requested the trial court extend temporary custody of the Child to Maternal Grandparents and protective supervision to RCCSB. After multiple hearings, the trial court extended temporary custody with the Maternal Grandparents, protective supervision by RCCSB, and ordered a new visitation plan for additional visitation with Paternal Grandparents.

{¶9} On August 7, 2019, RCCSB filed a motion for disposition requesting that Maternal Grandparents be granted legal custody of the Child. Father opposed the motion

and filed a motion for disposition that he or Paternal Grandparents be granted temporary or legal custody of the Child.

{¶10} On September 23, 2019, the trial court placed the Child in the temporary custody of Father. Maternal Grandparents filed a motion to intervene as a party to the proceedings and a disposition of legal custody of the Child to them.

{¶11} The trial court permitted the Maternal Grandparents to intervene for the purpose of seeking legal custody of the Child, but they were not made a party to the case.

{¶12} On April 22, 2020, the trial court terminated Father's temporary custody of the Child. The Child was placed back in the temporary custody of Maternal Grandparents.

**The Hearing**

{¶13} Starting on April 28, 2020, a five-day dispositional hearing was held before the magistrate on the pending motions for legal custody filed by RCCSB, Maternal Grandparents, and Father. The Child was four years old at the time of the hearing. We note that Mother and Father have not appealed the judgment of the trial court to award legal custody of the Child to Paternal Grandparents. The only party appealing the judgment is Maternal Grandmother, arguing that she should have been awarded legal custody of the Child. Below is a summary of the evidence presented at the hearing relevant to Maternal Grandmother's appeal.

*Mother and Father*

{¶14} At the time of the hearing, Mother was 42 years old. Tamika Jackson, AOD Assistant with Family Life Counseling, testified as to Mother's drug and alcohol treatment. Mother had a history of illegal drug use and drug seeking behaviors. Mother had not successfully completed a drug and alcohol treatment services during the pendency of the

proceedings. Mother testified that she started drinking alcohol and smoking marijuana around the age of 12 after she was given marijuana by her older brother, whom also struggled with drug abuse and criminal activity. Mother was aware as a teenager that her father used marijuana on a regular basis. Cheryl Purviance of Family Life Counseling conducted a mental health assessment of Mother and agreed that Mother grew up in a family culture of drug abuse, where the use of marijuana was normalized. Mother was only permitted supervised visitation with the Child due to her drug activity. Mother visited the Child at Maternal Grandparents' home.

{¶15} Dr. Aimee Thomas, a licensed psychologist and Executive Director of the Lighthouse Family Center, conducted a mental health assessment of Father. Father was 44 years old at the time of the hearing. Father was diagnosed with other specified disruptive disorder, impulse control and conduct disorder, and cannabis use disorder. Dr. Thomas' concern for Father was his propensity for anger and domestic violence, specifically towards Mother. There was a history of domestic violence between Mother and Father to which both Father and Mother were evasive with details. A video recorded on Mother's cell phone was played at the hearing that showed Father confronting Mother at her residence after the trial court ordered Father and Mother to have no contact. He violently and repeatedly kicked and banged on Mother's door, threatening Mother, and calling her derogatory names. After witnessing the video, Dr. Thomas stated that while Father had completed an anger management course, he had not internalized the skills. Dr. Thomas described Father as very charming during his assessment and admitted Father omitted pertinent information about his criminal history and relationship with Mother. Dr. Thomas was concerned about Father's relationships with women and how he

would cope with a teenage daughter. She was concerned that Father did not understand how his relationship with Mother could affect the Child. There was further testimony that Father brought the Child to Mother's home while armed, even though Father may not be permitted to carry a firearm due to prior felonies.

{¶16} Father used marijuana daily for pain management. He did not have a medical marijuana card and did not want to get one because it would prevent him from getting a hunting license.

*Maternal Grandparents*

{¶17} Maternal Grandmother testified that she and Maternal Grandfather had been the Child's caregiver since February 2018. Maternal Grandmother and Maternal Grandfather were 63 years old at the time of the hearing. Maternal Grandmother testified she was in good health. She worked full time in a factory, but at the time of the hearing, she was a temporary worker because of the pandemic. While she was at work, Maternal Grandfather was the sole caretaker for the Child. The Child did not have any playmates in their neighborhood and they did not testify if they brought the Child to preschool. When Maternal Grandmother got home from work, she would care for the Child.

{¶18} Maternal Grandfather testified at the hearing; during his testimony, an attorney asked if he felt okay because he was speaking very slowly. Maternal Grandfather had been on disability since 2003 due to a work accident. Because of the work accident, Maternal Grandfather suffered seizures that he controlled with daily medication, of which he did not know the name. In April 2020, he neglected to take his medication and suffered a seizure, resulting in a three-day hospitalization. During his hospital stay, the hospital

staff discovered marijuana in his pocket. Maternal Grandfather was arrested and charged with a first-degree misdemeanor for possession of drugs.

{¶19} Maternal Grandfather admitted to smoking marijuana two to three times a day. He stated that he started using it for pain relief in 2007, but he was using it prior to that time. He did not have a medical marijuana card because it was cheaper to purchase illegal marijuana. He testified smoking marijuana eased his pain but did not make him high. He said he did not smoke marijuana around the Child, but waited for an opportunity when she was taking a nap. Paternal Grandmother testified that she once observed the Child roll a dollar bill and lick the end like a joint. When she asked who showed the Child how to do that, the Child responded that she observed Maternal Grandfather. Maternal Grandmother was not concerned that he smoked marijuana.

{¶20} Both Maternal Grandparents smoked cigarettes around the Child. Paternal Grandmother testified that the Child smelled like cigarette smoke so strongly after coming from Maternal Grandparents, the Child needed a change of clothes and a bath. There was a question whether the Child's sinus and ear infection was exacerbated by the Maternal Grandparents' smoking. When asked if she would comply if the trial court ordered her to stop smoking around the Child, Maternal Grandmother said she would but it would infringe on her rights.

{¶21} Maternal Grandparents adapted to the changing custodial arrangements during the pendency of the case. Mother exercised her parenting time in their home and they provided Mother transportation. For 18 months, Father had weekend visitations, for 2 months the Child spent alternating weeks with Paternal Grandparents, during which time the Maternal Grandparents had the Child on weekends. When the Child was placed

in Father's care in September 2019, the Maternal Grandparents had her for the weekends to accommodate Mother's visitations.

{¶22} Maternal Grandparents did not like Father because of the verbal and physical abuse he had inflicted on Mother. Parental Grandparents did most of the visitation exchanges due to the animosity. Paternal Grandparents reported that after coming back from Maternal Grandparents, the Child said that Father was bad, Father hit Mother, and the Child should not like Father. Maternal Grandparents had a good relationship with Mother, in that they acknowledged her drug usage and related behaviors. For example, Maternal Grandmother admitted that Mother had stolen items from her home when she was over.

*Paternal Grandparents*

{¶23} Paternal Grandparents were both 67 years old at the time of the hearing. Paternal Grandmother worked inside the home and Paternal Grandfather was retired and elected as a Township Trustee. His former jobs included deputy sheriff with the Richland County Sheriff's Department, fire investigator with the State Fire Marshall, and a corrections officer for the Department of Corrections. They were in relatively good health but Paternal Grandfather had recovered from a complication from a 2016 prostate cancer surgery. In July 2019, he required surgery and rehabilitation to remove a blood clot. He was on blood thinners due to atrial fibrillation and blood pressure medication. Prior to the hearing, Paternal Grandfather had slipped on wet grass and had possibly injured his shoulder. Paternal Grandfather smoked three cigarettes per day but outside of the presence of the child.

{¶24} Paternal Grandparents did not meet the Child until she was six months old and did not start caring for her until the trial court permitted their involvement. They picked up the Child from Maternal Grandparents for Father's visitation. For two months they had the Child in their care on alternating weeks with the Maternal Grandparents. When the Child was placed in Father's care for seven months beginning September 2019, Paternal Grandparents provided much of the care. Father and Paternal Grandparents lived close to each other. When Father worked long days or was out of town, the Child stayed with Paternal Grandparents.

{¶25} Paternal Grandparents took the Child to church at least twice a week where the Child attended Sunday school with peers. Father enrolled the Child in daycare and Paternal Grandparents transported her to the school. The Child had a friend in the Paternal Grandparents' neighborhood. While in their care, the Child fell and hit her forehead on the coffee table. Paternal Grandparents could not reach Maternal Grandparents to provide medical care, so they took the Child to an urgent care. The Child was released from urgent care with instructions for ice and observation.

{¶26} Paternal Grandparents had a good relationship with Father but admitted they intentionally did not question Father about his relationship with Mother because they did not want to get involved with the drama. Paternal Grandfather acknowledged that he learned about Father's negative behaviors towards Mother for the first time during the trial court proceedings. Father did not tell them he was attending anger management classes when they watched the Child for him while he was at class. They were aware of Father's marijuana use and did not approve. The trial court asked Paternal Grandfather that if they had legal custody, would Father work well with them in respecting any limitations that they

placed on Father. Paternal Grandfather responded that Father would have no choice but to do what he was told, with the approval of the trial court.

{¶27} At the time of the hearing, the Guardian ad Litem did not have an opinion as to whom should have legal custody of the Child. The GAL admitted there was no clear-cut answer. The GAL filed a supplemental report stating it would be in the best interests of the Child to be placed in the legal custody of Maternal Grandparents, although she had concerns about Maternal Grandfather's ability to care for the Child. The GAL felt Paternal Grandparents would be an option for legal custody but conjectured they could be bullied by Father, so that he would be the de facto custodian of the Child.

## The Magistrate's Decision

{¶28} On June 18, 2020, the magistrate reconvened the parties and announced the decision on the record. Based on the evidence presented at the hearing, the magistrate recommended it was in the best interest of the Child if the Paternal Grandparents were awarded legal custody. The magistrate first found that Mother and Father were unsuitable due to Mother's substance abuse issues and Father's anger and domestic violence towards Mother. The magistrate next found the Grandparents were similarly qualified but not equally qualified. Paternal Grandparents, in the magistrate's estimation, had more to offer the Child in terms of safety as to her daily care. Unlike the Maternal Grandparents where Maternal Grandfather provided for the Child's daily care, there were two relatively healthy adults to look after the Child, who did not smoke cigarettes or marijuana in the Child's presence, and offered the Child more stimulation and activity. Both Father and Mother were to remain in the Child's life and Maternal

Grandparents had a negative relationship with Father. Paternal Grandparents would better facilitate the Child's relationships with Mother, Father, and Maternal Grandparents.

{¶29} Father was granted supervised visitation with the Child. Maternal Grandparents and Mother were granted visitation with the Child. RCCSB was ordered to have protective supervision over the Child for a limited period of time to assist the Paternal Grandparents in accessing services and increase their understanding of the risks that Father's psychological problems and behaviors presented to the Child.

{¶30} The Magistrate's Decision was journalized on June 17, 2020.

### The Objections and Trial Court Judgment

{¶31} Mother and Father filed objections to the Magistrate's Decision. Relevant to this appeal, Maternal Grandmother filed objections and supplemental objections on June 30, 2020, October 15, 2020, and October 29, 2020. The crux of Maternal Grandmother's objections was that the magistrate did not consider the impact of Father's criminal behavior on the Child, of which the Paternal Grandparents testified they had no knowledge until the hearing. She agreed with the GAL's opinion that Paternal Grandparents would be complacent with Father and allow him to become the de facto custodian of the Child. Maternal Grandmother further notified the trial court that Maternal Grandfather passed away after the hearing. She stated she was willing to retire permanently or make schedule changes if granted legal custody.

{¶32} Upon review of the transcript and other evidence in the record, the trial court found the magistrate's decision was supported by the evidence. It found insufficient evidence to demonstrate that Father would bully the Paternal Grandparents. It further determined that Maternal Grandmother's willingness to retire was irrelevant to the facts

that existed before the magistrate. The magistrate's decision was approved and adopted on December 29, 2020.

{¶33} It is from this judgment that Maternal Grandmother now appeals.

**ASSIGNMENT OF ERROR**

{¶34} Maternal Grandmother raises one Assignment of Error:

{¶35} "THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, SO IT MUST BE REVERSED AND THE CASE REMANDED FOR A NEW TRIAL."

**ANALYSIS**

{¶36} In her sole Assignment of Error, Maternal Grandmother argues the trial court erred when it granted legal custody of the Child to Paternal Grandparents. Mother and Father did not appeal the judgment of the trial court to appoint Paternal Grandparents as legal custodian. Father filed an appellee's brief arguing the judgment of the trial court was supported by the preponderance of the evidence. RCCSB also did not appeal the judgment of the trial court; however, it filed an appellee's brief supporting Maternal Grandparent's arguments that the trial court erred in granting legal custody of the Child to Paternal Grandparents. RCCSB contends Maternal Grandmother should be named the legal custodian. Accordingly, this appeal does not involve a parent appealing the award of legal custody to a non-parent. In this case, it is a non-parent appealing the award of legal custody to another non-parent.

{¶37} Before awarding legal custody to a non-parent, a trial court must ordinarily make a finding that each parent is unsuitable. *In re L.P.*, 5th Dist. Muskingum No. CT2016-0045, 2017-Ohio-52, ¶ 18 citing *In re L.M.*, 2nd Dist. Greene No. 2010–CA–76,

2011–Ohio-3285, ¶ 18 citing *In re Hockstock*, 98 Ohio St.3d 238, 2002–Ohio–7208, 781 N.E.2d 971. This requirement does not apply, however, in cases involving abuse, neglect, or dependency. *Id*. The Ohio Supreme Court in *In re C.R.* held "[a] juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188, paragraph one of syllabus. Thus, "[w]hen a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent." *In re L.M.*, 2011–Ohio–3285 quoting *In re C.R.*, 108 Ohio St.3d 369, paragraph two of syllabus.

{¶38} In this case, the Child was adjudicated dependent.

{¶39} Custody issues are some of the most difficult and agonizing decisions a trial court judge must make; for that reason, the trial court is given "wide latitude in considering all the evidence." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen*, 129 Ohio St.3d 417, 2011–Ohio–3361, ¶ 14. We review the award of legal custody for an abuse of discretion. *In re L.D.* at ¶ 8; *In re Gales*, 10th Dist. No. 03AP–445, 2003–Ohio–6309, ¶ 13; *In re N.F.*, 10th Dist. No. 08AP–1038, 2009–Ohio–2986, ¶ 9, citing *In re Nice*, 141 Ohio App.3d 445, 455 (7th Dist.). Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). We must presume that the trial court's findings are correct

because the trial court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Therefore, deferential review in a child custody determination is especially crucial "where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis* at 419.

{¶40} Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *In re S.D.*, 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013–Ohio–5752, ¶ 32; *In re A.C.*, 12th Dist. No. CA2006– 12–105, 2007–Ohio–3350 at ¶ 14; *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001).

{¶41} In this type of dispositional hearing, the focus is on the best interest of the child. *In re T.B.*, 5th Dist. Muskingum No. CT2018-0065, 2019-Ohio-1747, 2019 WL 2041906, ¶ 26 citing *In re C.R.*, 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188; *In re P.S.*, 5th Dist. No. 2012CA00007, 2012–Ohio–3431. Despite the differences between a disposition of permanent custody and legal custody, some Ohio courts have recognized "the statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody decisions." *In re A.F.*, 9th Dist. No. 24317, 2009–Ohio–333 at ¶ 7, citing *In re T.A.*, 9th Dist. No. 22954, 2006– Ohio–4468 at ¶ 17; *In re S.D.* 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013– Ohio–5752, ¶ 33. R.C. 2151.414(D) sets forth factors to be considered in making a determination regarding the best interest of the child.

{¶42} In that regard, the juvenile court is guided by the best interest factors enunciated in R.C. 2151.414(D) relating to permanent custody. *In re M.T.*, 9th Dist. Summit No. 29690, 2020-Ohio-5493, 2020 WL 7055379, ¶ 20 citing *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. *In re M.T.* at ¶ 20 citing R.C. 2151.414(D)(1)(a)-(e). In addition, the juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re M.T.* at ¶ 20 citing *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850, 15CA010860, 2017-Ohio-1, ¶ 17. "While some factors overlap with those above, others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; whether a parent plans to or has established a residence outside of Ohio; and certain indicia of violence, abuse, or neglect in any household involved. R.C. 3109.04(F)(1). Such indicia include convictions relating to the abuse or neglect of a child, as well as whether there exists any 'reason to believe that either parent has acted in a manner resulting in a child being an abused or a neglected child[.]' R.C. 3109.04(F)(1)(h)." *Id.* at ¶ 20.

{¶43} On appeal, Maternal Grandmother reiterates her objections to the magistrate's decision. The thrust of her argument is that Paternal Grandparents are ignorant of and complacent to Father's documented violent and aggressive behavior and their ignorance will put the Child in harm's way. She supports the GAL's opinion that

Father could bully the Paternal Grandparents into permitting him unsupervised contact with the Child.

{¶44} The record in this case shows that while Mother and Father are the children of Maternal Grandparents and Parental Grandparents, they are also adults over 40 years of age who live and work independently from their parents. It does not belie belief that Parental Grandparents would not know all the details of Father's life, especially if Father chose not to share those details as the record demonstrated, for example, he did not tell them he was attending anger management classes. After hearing the testimony, however, Parental Grandparents testified that they were aware of Father's negative behaviors and the aspects of his life that he did not share with his parents. For example, Dr. Thomas testified that Father had failed to internalize the skills learned in anger management as demonstrated by the video of him beating and kicking Mother's door. Mother and Father testified that while they were ordered to stay away from one another, they disobeyed that order. Father brought the Child to Mother's home while armed. Paternal Grandparents testified they understood the trial court's admonition that if they were the Child's legal custodian, they would be required to abide by the trial court's orders, including limiting Father to supervised visitation.

{¶45} As the trial court noted in its judgment overruling Maternal Grandmother's objections, there was no evidence in the record that Father had bullied Parental Grandparents into violating the trial court's orders as to the Child. It was the opinion of the GAL that based on Father's past behaviors and Parental Grandparents' knowledge of those behaviors, Father may take advantage of the Parental Grandparents in the future. The trial court is tasked to examine the present circumstances of the child, not on

what possibly may happen in the future. *P.K. v. J.V.,* 2018-Ohio-5383, 128 N.E.3d 813, ¶ 44 (5th Dist.) citing *In re Davis,* 7th Dist. No. 02-CA-95, 2003-Ohio-809, 2003 WL 405540, ¶ 19; *Seibert v. Seibert,* 66 Ohio App.3d 342, 584 N.E.2d 41 (12th Dist.1990). Further, the trial court is not required to follow a GAL's recommendation; it has discretion to follow or reject it. *In re A.M.,* 5th Dist. Licking No. 18-CA-83, 2019-Ohio-1578, 2019 WL 1894488, ¶ 48 citing *Pasco v. Pasco,* 5th Dist. Delaware No. 2018 CAF 06 0047, 2019-Ohio-1099, citing *Clyburn v. Gregg,* 4th Dist. Ross No. 11CA3211, 2011-Ohio-5239, ¶ 47; *Hammons v. Hammons,* 5th Dist. Delaware No. 13 CAF 07 0053, 2014-Ohio-221, ¶ 12. The record shows that the GAL struggled with this case as well, resulting in a delay of the GAL's recommendation for legal custody.

{¶46} Maternal Grandmother next contends that the issues concerning the care of the Child by Maternal Grandfather are moot because he has since passed away. Maternal Grandmother stated in her objections to the trial court and in her appeal to this Court that she was willing to retire to be the full-time caretaker of the Child. The trial court overruled that objection, finding that facts raised after the dispositional hearing were not relevant to the magistrate's decision.

{¶47} Pursuant to Civ.R. 53(D)(4)(d), "* * * In ruling on objections, the court shall undertake  an independent review  as to the objected  matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." It was within the discretion of the trial court to take new evidence. The trial court determined that the preponderance

of the evidence demonstrated it was in the best interest of the child to be placed in the custody of Paternal Grandparents despite the new evidence of Maternal Grandfather's death and Maternal Grandmother's statement that she would be taking on the role of full-time caretaker. The record in this case supports the trial court's determination that Paternal Grandparents were in relatively good health and both able to care for the Child. Paternal Grandparents did not smoke cigarettes around the Child. When the Child needed medical care, Paternal Grandparents responded. Paternal Grandparents took the Child to church where she could engage with peers. The Child had a friend in their neighborhood. The Child was happy with her Paternal Grandparents, as she was with all her family members. We find the record supports the trial court's findings that it was in the best interest of the Child, based on the evidence presented, to be placed with Paternal Grandparents.

{¶48} In its appellate brief, RCCSB accuses the trial court of acting as Solomon to arbitrarily split the baby. There is no question that all parties love the Child and are concerned for the Child's welfare. All parties and the GAL presented compelling reasons for custody and this was not an easy matter to resolve. In all custody matters, however, the paramount concern is the best interest of the child. The breadth of the record in this case demonstrates the trial court's commitment to its duty to lessen the issues created by Mother and Father and determine what would be in the best interests of this child. Because custody decisions are some of the most difficult decisions to judge, the trial court is given a great deal of discretion to make a determination. The role of the appellate court is to review the proceedings and determine if the trial court abused its discretion.

{¶49} In this case, we find no abuse of discretion to award legal custody of the Child to Paternal Grandparents.

{¶50} Maternal Grandmother's sole Assignment of Error is overruled.

## CONCLUSION

{¶51} The judgment of the Richland County Court of Common Pleas, Juvenile Division, is affirmed.

By: Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.