[Cite as *In re A.B.*, 2026-Ohio-1960.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
MUSKINGUM COUNTY, OHIO

| | |
|---|---|
| IN THE MATTER OF: A.B. | Case No. CT2025-0137 |
| | <u>Opinion and Judgment Entry</u> |
| | Appeal from the Muskingum County Court of Common Pleas, Juvenile Division, Case No. 22430173 |
| | Judgment: Affirmed |
| | Date of Judgment Entry: May 26, 2026 |

**BEFORE:** Andrew J. King; William B. Hoffman; David M. Gormley, Judges

**APPEARANCES:** Richard D. Hixson, for Mother; Evan Wagner, for Father; Deborah Fries, Guardian ad Litem; Kelly Parks, for Grandparents; Ronald L. Welch, Muskingum County Prosecutor, Jacob J. Winslow, Assistant Prosecuting Attorney, for MCACPS - Appellee.

*Hoffman, J.*

{¶1} Appellant D.D. (hereinafter "Mother") appeals the judgment entered by the Muskingum County Common Pleas Court, Juvenile Division, granting legal custody of her child, A.B. (hereinafter "Child"), to the Child's paternal grandparents (hereinafter "Grandparents"). Appellee is Muskingum County Adult and Child Protective Services (hereinafter "the Agency").

STATEMENT OF THE FACTS AND CASE

{¶2}  In May of 2024, Mother left the Child with his biological father (hereinafter "Father") in Muskingum County, Ohio.  On October 30, 2024, the Agency filed a complaint alleging the Child was abused.  The complaint alleged the Child had bruises on his face, arms, and back, and had a knot on the top of his head.  The Child stated he kept running into doorknobs. The Agency noted discrepancies when discussing the matter with Father, Father's paramour, and the Child. During an interview with law enforcement, the Child stated the bruising was the result of corporal punishment administered by Father and his paramour.

{¶3}  At the time the Agency filed the complaint, Mother's whereabouts were unknown.  Mother was served by publication.  The Agency was awarded ex parte temporary custody of the Child and the matter was set for further hearing.

{¶4}  The Grandparents, who reside in the state of Delaware, filed a motion to intervene and a motion for legal custody of the Child on November 19, 2024.  The Agency located Mother in Vandergrift, Pennsylvania.  At a hearing on December 17, 2024, all parties, including Mother, stipulated the Child was dependent. The Agency dismissed the abuse allegations.

{¶5}  The Child was placed in the home of the Grandparents on December 23, 2024.  If Mother or Father planned to travel to Delaware for supervised visitation with the Child, they were to request visitation by emailing the Grandparents, including the caseworker on the email.  The parents were also able to set up Face Time visitation with the Child through the Grandparents.

{¶6}  A case plan was filed for Father, his paramour, and Mother.  The case plan included new concerns the Child's hair had been forcibly removed while living with

Father.  The case plan noted Mother had limited contact with the Child after dropping him off with Father in May of 2024.

{¶7}   On April 30, 2025, Father and his paramour were each sentenced to thirty-six months of incarceration after pleading guilty to endangering children.  They were removed from the case plan.

{¶8}   The guardian ad litem filed a motion on May 13, 2025, requesting the Grandparents be given legal custody of the Child.  The motion stated the Child was thriving in the Grandparents' home, Mother had not completed her case plan, and Mother had infrequent contact with the Child.  The motion stated Mother's housing and transportation had not significantly improved in order to allow her to provide for the Child.  The motion further noted the Grandparents were expected to receive placement of the unborn child of Father and his paramour, and an award of legal custody to the Grandparents would allow the half-siblings to reside together.

{¶9}   Mother objected, arguing the motion was premature and not in the best interest of the Child.  Mother filed a motion seeking legal custody of the Child, stating she had stable housing, employment, and finances, and had completed her parenting classes.  The Grandparents renewed their motion to intervene and filed a motion for legal custody.  The Agency also filed a motion requesting the Grandparents be awarded legal custody.

{¶10} The case proceeded to a hearing in the Muskingum County Common Pleas Court, Juvenile Division.  Following the hearing, the trial court awarded legal custody of the Child to the Grandparents, adopting the November 17, 2025, report of the Agency as if fully rewritten in the trial court's judgment entry.  The report of the Agency stated Mother canceled visitation with the Child in November of 2024.  From the time the Child was placed with the Grandparents in December of 2024, Mother had the opportunity for

telephone calls with the child twice a week, but Mother did not regularly follow through with telephone visitation until April of 2025. Mother attended the Child's kindergarten graduation in June of 2025, which was the first time she had seen the Child in more than one year. However, Mother only stayed for forty-five minutes. No further visits were scheduled. The report indicated the Child was well-adjusted in his Grandparents' home, attending school and medical appointments. The Child was diagnosed with ADHD, and the Grandparents were following through with appropriate treatment for the Child.

{¶11} It is from the December 2, 2025, judgment of the trial court Mother prosecutes her appeal, assigning as error:

I. THE TRIAL COURT LACKED SUBJECT MATTER JURISDICTION IN THIS MATTER UNDER OHIO'S UNIFORM CHILD CUSTODY JURISDICTION AND ENFORCEMENT ACT.

II. THE AGENCY FAILED TO MAKE REASONABLE EFFORTS TO REUNIFY THE FAMILY PRIOR TO THE GRANT OF LEGAL CUSTODY AND THE TRIAL COURT ERRED WHEN IT FOUND THAT REASONABLE EFFORTS WERE MADE.

III. THE TRIAL COURT ERRED WHEN IT FOUND THAT A GRANT OF LEGAL CUSTODY TO PATERNAL GRANDPARENTS WAS IN THE BEST INTEREST OF THE MINOR CHILDREN [SIC].

{¶12} This case comes to us on the accelerated calendar. App.R. 11.1, which governs accelerated calendar cases, provides, in pertinent part:

**(E) Determination and judgment on appeal.**

The appeal will be determined as provided by App.R. 11.1. It shall be sufficient compliance with App.R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form.

The decision may be by judgment entry in which case it will not be published in any form.

**{¶13}** This appeal will be considered in accordance with the aforementioned rule.

I.

**{¶14}** In her first assignment of error, Mother argues the trial court lacked jurisdiction over the case based on the Uniform Child Custody Jurisdiction and Enforcement Act (hereinafter "UCCJEA"). We disagree.

**{¶15}** R.C. 2151.23(A)(1) grants the juvenile court exclusive original jurisdiction concerning any child who, on or about the date specified in the complaint, is alleged to be an abused, neglected, or dependent child. R.C. 2151.23(A)(2) grants the juvenile court exclusive jurisdiction to determine the custody of a child who is not a ward of another court of Ohio. R.C. 2151.23(F)(1) provides the juvenile court shall exercise its jurisdiction in child custody matters in accordance with R.C. 3127.01 to 3127.53 of the Ohio Revised Code, which is Ohio's codification of the UCCJEA.

**{¶16}** R.C. 3127.18 provides in pertinent part:

(A) A court of this state has temporary emergency jurisdiction if a child is present in this state and either of the following applies:

(1) The child has been abandoned.

(2) It is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

(B) If there is no previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under sections 3127.15 to 3127.17 of the Revised Code or a similar statute of another state, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under sections 3127.15 to 3127.17 of the Revised Code or a similar statute of another state. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under sections 3127.15 to 3127.17 of the Revised Code or a similar statute of another state, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

{¶17} We find the facts of this case satisfy R.C. 3127.18(A)(2). The Child was present in Ohio when the case commenced. The complaint detailed concerns about possible physical abuse of the child while in Father's care in Ohio, including concerns about a knot on the Child's head and bruising on the Child.

{¶18} Further, at an adjudicatory hearing, Mother stipulated to a finding of dependency, thus admitting removal of the Child from Father's home was necessary to

prevent immediate or threatened physical or emotional harm to the Child, the Child had no parent able to care for the Child, and continued residence with Father was contrary to the best interest of the Child. Although a party cannot waive a court's subject matter jurisdiction, stipulation to the truth of facts necessary to establish subject matter jurisdiction may suffice to confer jurisdiction upon the court through estoppel. *In re Palmer*, 12 Ohio St. 3d 194, 196 (1984). We find the facts stipulated to by Mother sufficient to confer jurisdiction upon the court pursuant to R.C. 3127.18(A)(2).

{¶19} There is no competing order regarding the Child in Delaware, where the Child resides with the Grandparents. Therefore, pursuant to R.C. 3127.18(B), Ohio became the home state of the Child moving forward.

{¶20} The first assignment of error is overruled.

II.

{¶21} In her second assignment of error, Mother argues the trial court erred in finding the Agency made reasonable efforts to reunify the family. We disagree.

{¶22} R.C. 2151.419 requires the trial court to determine whether the agency filing the complaint for custody "has made reasonable efforts * * * to eliminate the continued removal of the child from his home, or to make it possible for the child to return home." Subsection (B)(1) mandates the trial court to issue written findings of fact setting forth the reasonable efforts made by the agency, including a brief description of "the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from his home or enable the child to return home."

{¶23} A "reasonable effort" is "an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63 (12th Dist. 1992). The issue is not whether there was anything more the agency

could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In re J.D.,* 2011-Ohio-1458, ¶ 14 (3rd Dist.). The child's health and safety are paramount in determining whether reasonable efforts were made. *In re R.P.,* 2011-Ohio-5378, ¶ 47 (5th Dist.).

{¶24} Mother specifically argues the Agency did not make reasonable efforts to facilitate visitation in the instant case. The Child was placed with the Grandparents in Delaware, while Mother resides in the Pittsburgh area, a six-to-seven-hour drive from the Child's placement in Delaware.

{¶25} The Agency worked with Pennsylvania to conduct a home study of Mother's home and conducted a background check of both Mother and her partner who resides in Mother's home. The Agency's caseworker attempted to contact Mother monthly by email or telephone but often did not receive a response from Mother. Before the Child was placed in Delaware, the Agency scheduled a visit for November 4, 2024. Mother canceled the visit. After the Child was placed in Delaware in December of 2024, Mother had the ability to schedule twice weekly video calls but did not begin communicating regularly with the child until April of 2025. Mother only visited the Child once from the time she dropped the Child off with Father in May of 2024, and the date of the hearing on December 1, 2025. Mother stayed less than an hour for the single visit. In addition, during the time the Child resided in foster care in Ohio, a shorter drive from Mother's new residence than Delaware, Mother failed to visit. Although Mother argues the Agency did not facilitate visitation, Mother failed to fully take advantage of the opportunities which were available to her for visitation. The Grandfather testified the Grandparents were willing to facilitate visitation and would allow Mother to stay in their home. We find

the trial court did not err in finding the Agency made reasonable efforts to reunify Mother with the Child.

**{¶26}** The second assignment of error is overruled.

III.

**{¶27}** In her third assignment of error, Appellant argues the trial court erred in finding a grant of legal custody to the Grandparents was in the best interest of the Child. We disagree.

**{¶28}** We review the award of legal custody under an abuse of discretion standard. *In re: J.W.,* 2021-Ohio-2917, ¶ 39 (5th Dist.). "Abuse of discretion" connotes more than an error of law or judgment. Rather, it implies the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The trial court is given wide latitude in considering all the evidence in proceedings involving the care and custody of children. Therefore, deferential review in a child custody determination is especially crucial "where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 1997-Ohio-260, ¶ 15.

**{¶29}** The degree of proof required in legal custody proceedings is a preponderance of the evidence. *In re: S.D.,* 2013-Ohio-5752, ¶ 32 (5th Dist.). Preponderance of the evidence is defined as "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it." *In re: A.W.-G.,* 2004-Ohio-2298, FN. 1(12th Dist.).

**{¶30}** R.C. 2151.414(D) sets forth factors in determining the best interest of the child. While the factors are related to permanent custody decisions, Ohio courts have adopted such standards in making legal custody decisions. *In re: S.D.,* 2013-Ohio-5752,

¶ 33 (5th Dist.). Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. §2151.414(E)(7)-(11) are applicable. *In re: J.W.,* 2021-Ohio-2917, ¶ 42 (5th Dist.). In addition, the best interest factors set forth in R.C. 3109.04(F)(1) may be used by the juvenile court for guidance. *In re M.T.,* 2020-Ohio-5493, ¶ 20 (9th Dist.). These factors include the child's adjustment to his or her environment, the mental and physical health of all persons involved, the parents' history of providing support and honoring companionship orders, whether a parent plans to or has established a residence outside of Ohio; and certain indicia of violence, abuse, or neglect in any household involved. R.C. §3109.04(F)(1).

**{¶31}** In the instant case, Grandfather testified he was willing to facilitate visitation with Mother, including allowing her to stay with them for a week to visit the Child. Prior to the initiation of this case, the Child lived in Delaware with the Grandparents, in North Carolina with Mother, in Delaware with Mother, and finally in Ohio with Father. An award of legal custody to the Grandparents provides the Child with stability during the pendency of this case. The Child has lived with the Grandparents for roughly half of his life. The Child's half-sibling also resides with the Grandparents, and the Child is bonded to her. The Child is doing well in school and is involved in soccer. The Grandparents have ensured the Child participates in counseling for the abuse he suffered while living with Father. The Child is receiving treatment for ADHD. Both the guardian ad litem and the Agency believed a grant of legal custody to the Grandparents was in the Child's best interest. We find the trial court did not abuse its discretion in finding an award of legal custody to the Grandparents was in the Child's best interest.

**{¶32}** The third assignment of error is overruled.

**{¶33}** The judgment of the Muskingum County Common Pleas Court, Juvenile Division, is affirmed.

**{¶34}** Costs are assessed to Appellant.


By: Hoffman, J.

King, P.J. and

Gormley, J. concur.